McKENZIE v. POORMAN SILVER MINES OF COLORADO, Limited.

(Circuit Court of Appeals, Eighth Circuit.    June 20, 1898.)

No. 1,053.

**1. CODE PLEADING—DENIALS OF ANSWER.**
Under the Colorado Code, the plea of the general issue, as known at common law, is abolished, and the answer must contain a denial of each material allegation intended to be denied, and every material allegation not controverted is taken as true.

**2. ACCOUNT STATED.**
A mere allegation that, on a certain date, plaintiff "rendered to defendant a statement of said account" (being the account sued on), is not equiv-

alent to an averment that the account between the parties had been stated, showing a specific sum due, so as to make the suit one on an account stated.

**2. CORPORATIONS—CONTRACTS OF AGENTS—RATIFICATION.**

In an action against a corporation on a contract made between plaintiff and a third person, who is alleged to have acted in behalf of the corporation, it is not necessary to show that the contract was made under authority of a resolution of the board of directors; and, if there is evidence tending to show that it was made in the interest of the corporation, which recognized it, accepted its benefits, and acted on its provisions, this is sufficient to warrant the submission of the cause to the jury.

In Error to the Circuit Court of the United States for the District of Colorado.

Willard Teller (H. M. Orahood and E. B. Morgan, on the brief), for plaintiff in error.

Hugh Butler, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

SHIRAS, District Judge. This action was brought by plaintiff for the purpose of recovering from the defendant, a corporation created under the laws of Great Britain, the sum of $14,005.35, it being averred in the petition that the defendant on the 24th day of October, 1894, was indebted to plaintiff for services by him rendered to defendant as superintendent of its mines and property in Boulder county, Colo., and for money expended, and goods, wares, and merchandise furnished, by plaintiff to defendant, in superintending and prosecuting the work and operations of the defendant; that on the day above named plaintiff rendered to defendant a statement of the account, and defendant thereupon acknowledged said indebtedness, and then and there promised plaintiff to pay the same, but has failed and neglected to pay the same or any part thereof. To this petition an answer was filed, wherein the defendant denied:

"That on the 24th day of October, 1894, or at any other time, it was indebted to the plaintiff in the sum of $14,005.35, or in any other sum, for services by the plaintiff theretofore or at any time rendered to the defendant, or for money expended, or for goods, wares, and merchandise furnished, by plaintiff in superintending and prosecuting the work and operations of the defendant, or for any other consideration, or at all; and it denied that on said 24th day of October, 1894, or at any other time, it acknowledged that it was indebted to the plaintiff in the sum of $14,005.35, or in any other sum whatever, or that said sum, or any sum whatever, was due from defendant to plaintiff; and it further denied that it promised to pay to the plaintiff the said sum, or any sum whatever."

When the case was called for trial, and after the jury had been sworn, the plaintiff moved the court for an instruction to the jury to return a verdict in accordance with the prayer of the complaint, on the ground "that the denial of the wording of the indebtedness of the complaint is not a denial under the authorities decided by the supreme court." This motion was overruled by the court, and the case proceeded to a hearing upon the evidence, the plaintiff in the first instance introducing evidence tending to show that he had been in the employ of the defendant company as superintendent of the

mines operated by the defendant company, and had expended certain sums of money and furnished goods and wares in connection therewith, and that on or about the 24th day of October, 1894, he and Thomas W. Goad, who, it is claimed, was acting as the general manager of the defendant company, went over plaintiff's account, and agreed upon the sum of $14,005.35 as being the amount due, a statement thereof being made and furnished to Mr. Goad, who said he would forward it to the company in Scotland.

Upon the conclusion of the evidence, the court instructed the jury to find for the defendant, and plaintiff now brings the case before this court by writ of error, and the first ground assigned as error is the action of the trial court in overruling plaintiff's motion for verdict and judgment on the pleadings. The position taken by plaintiff is that the action is on an account stated, and that the answer presented no issue, because it did not deny the averment of the petition that the plaintiff on the 24th day of October, 1894, rendered to defendant a statement of said account, and that, in the absence of a denial of this averment, all the other denials of the answer are of no avail. It is admitted by counsel for plaintiff that the Code of Colorado has abrogated the plea of the general issue as known in the common law, and requires either a general or specific denial of the averments of the complaint. At the common law, in an action upon an account stated, the plea would be "non assumpsit," the foundation of the action being the promise, express or implied, to pay the amount shown to be due by the account stated. This denial is found in the answer of the defendant in this case, and, in substance, the denials of the answer amount to the general issue, which would have been available under the common-law system of pleading. But, as the code system of pleading obtains in Colorado, the answer is to be viewed in the light of the code provisions, which are to the effect that the answer must contain a denial of each material allegation intended to be denied, and that every material allegation not controverted by the answer shall be taken as true; and the contention of the plaintiff is that, as the answer did not deny the averment in the complaint "that plaintiff on said last-named day [October 24, 1894] rendered to defendant a statement of said account," this averment must be taken to be true, and therefore plaintiff was entitled to judgment on the pleadings.

If the averment in the complaint had been to the effect that on the 24th of October, 1894, an account between the parties had been stated, showing a specific sum to be due plaintiff, it might be that a failure to deny such statement would be construed to be an admission of the cause of action, but that is not the averment in this case. The mere rendition of an account from one party to another does not constitute an account stated, upon which an action can be maintained.

Thus, in Toland v. Sprague, 12 Pet. 300, a case cited by counsel for plaintiff, it is said:

"We agree with the court that the mere rendering an account does not make it a stated one; but that if the other party receives the account, admits the

correctness of the items, claims the balance, or offers to pay it, as it may be for or against him, then it becomes a stated account."

The admission of the account rendered, so as to make it an account stated, may be inferred from retaining the same for a sufficient or reasonable length of time without objecting thereto, but such retention is merely the evidence from which the admission is inferred; and therefore when, as in this case, it is averred in a complaint that an account was rendered, and that it was acknowledged by the defendant, who promised to pay it, the case would not be made out by proving that an account had been rendered. It would be necessary, in addition, to prove that the defendant had either expressly promised to pay the amount, or, by receiving the account and retaining it without objection, had impliedly admitted its correctness, from which admission the promise to pay would be implied.

In this case the answer, while admitting that the account had been rendered, expressly denied that the defendant had ever acknowledged it to be correct, or had ever promised to pay it, and thus an issue of fact was created, putting plaintiff to his proof, and the court did not err in overruling the motion for judgment on the pleadings.

The next question for determination is whether the court below erred in directing a verdict for the defendant upon the evidence in the case. As already stated, the plaintiff is seeking to recover for services alleged to have been rendered to defendant as superintendent of the mining property, and also for money expended and goods and wares furnished to the defendant in carrying on the operations of the mine from 1891 to 1894. From the evidence it appears that the mine was originally owned by plaintiff; that on the 1st day of September, 1891, a written agreement was entered into between the plaintiff and H. A. W. Tabor, which recites that a contract had before that date been entered into between the parties with regard to the sale of the Poor Man Lode Mining Claim, in Boulder county, Colo.; that in pursuance of that contract a corporation had been formed under the laws of Great Britain, named the "Poorman Silver Mines of Colorado, Limited," with a capital stock of 130,000 shares, of £1 each, of which 103,000 were ordinary, and 27,000 were deferred, shares; that 10,000 of the ordinary shares had been sold for $48,500, which amount had been paid to plaintiff in part payment of the purchase price of the property; that 4,000 shares of the deferred stock were to be issued to the promoters of the company in payment for their services, the remaining 23,000 deferred shares were to be held to procure a working capital for the company, and the remaining 93,000 shares of common stock were to be issued to plaintiff, and, upon the delivery of the deed of the mining property to the corporation, the 93,000 shares of stock issued to plaintiff were to be deposited in the Denver National Bank, Colo., or with its correspondent, the Alliance Bank of London, subject to the order of H. A. W. Tabor, who had the right to withdraw the same from time to time, upon paying into the bank to the credit of plaintiff 80 per cent. of the par value of the stock, and upon the completion of the payment of $330,000, the agreed purchase price, to the plaintiff, the remaining stock should be delivered to the said Tabor; it being further agreed

"that the said party of the first part, until he shall be paid in full for his said property, as above herein provided for, shall remain as superintendent, in charge and control of the mine, at a salary of three hundred dollars per month, and that T. W. Goad shall be the resident and consulting engineer of said company."

The evidence does not clearly show the relation actually existing between Tabor and the defendant corporation, but it would appear, from the recitals of this contract, that the corporation was organized for the purpose of completing the contract of purchase of the mine existing between plaintiff and Tabor, and by its terms this contract of September 1, 1891, provided for the purchase of the property by the defendant company, and there is evidence tending to show that the defendant corporation took the benefit of the contract. The contract recites that the property has been conveyed to the company by good and sufficient deeds, which by the further terms of the contract were to be delivered to the Denver National Bank or the Alliance Bank of London, to be held until payment of the purchase price had been completed. It is true this contract is signed only by plaintiff and by Tabor, but, if from the entire evidence it should be found that the defendant company accepted its benefits and acted under its provisions, there would be ground for holding that the company had assumed its obligations, which question would be for the jury under the evidence in the case. This contract expressly provides that the plaintiff, until full payment for the property has been made, should remain in charge and control of the mine, as superintendent, at a salary of $300 per month. The trial judge deemed this to be an absurd and foolish agreement, and held that, before it could be made binding upon the defendant, it ought to be made to appear that it was made by resolution of the board of directors, through and by the constituted authorities, and that it did not appear that Tabor had authority to make such a bargain on behalf of the company. The question is not whether this particular provision of the contract was or was not a wise or foolish provision. It is part of the contract, as plainly stated as it is possible to put it, and it forms part of the consideration for which the plaintiff agreed to sell the mining property to the defendant company. The question to be decided is whether the company is bound by the terms of the contract. The plaintiff testified that this contract of September 1, 1891, was the contract under which the defendant bought the mine; and there was certainly, therefore, some evidence to show that this written contract was made in the interest of the company; and, if the company recognized it, accepted its benefits, and acted on its provisions, this would be evidence showing that it was adopted by the company; and, if in fact it was thus recognized and adopted, it became binding upon the company, the same as though it had been formally executed in the corporate name.

It must be further remembered that the suit is not only to recover the sum claimed to be due the plaintiff, as salary for the time he remained in charge of the mine, but also for money expended by plaintiff in paying expenses incurred in running the mine; and there is evidence tending to show that T. W. Goad directed plaintiff to

operate the mine, after the defendant company had become inter-· ested therein, and that money was expended in putting in machinery, in clearing the mine of water, and in paying the wages of the men employed, and that ore of the value of $70,000 was mined and sold; and there is evidence tending to show that the defendant company received a portion of this money, and to some extent, at least, accepted the benefits of the work done and expenditures made by plaintiff, but the court refused to submit the issue on this branch of the case to the jury. It is not to be denied that upon the questions of the relation of H. A. W. Tabor to the defendant company, of the connection of the company with the contract of purchase of the mining property, of the authority actually possessed and exercised on behalf of the defendant company by T. W. Goad, who in some form and to some extent represented the corporation, the evidence, as presented by this record, is confused and very far from satisfactory, and yet we are of the opinion that it contains some evidence tending to show that the corporation had become bound by the contract of September 1, 1891; that T. W. Goad did to some extent represent and act for the company in managing the affairs of the company in connection with the mining property; that, under the joint management of the plaintiff and T. W. Goad, the mine was operated, expenses incurred, and ore mined of the value of $70,000, which to a greater or less extent went to the benefit of the defendant company; and therefore there was evidence which should have been submitted to the jury, in order that it might be determined, as matters of fact, whether the company had recognized the contract of September 1, 1891, and by accepting its benefits had become bound by its obligations; whether the acts and contracts of T. W. Goad bound the company, either by reason of previous authority granted him, or by approval of his acts in its behalf; and whether the company, by accepting the benefits of the work done and expenditures made by plaintiff in operating the mine, had become bound to repay the cost thereof.

If there was evidence on these matters for the consideration of the jury, as we hold there was, the court below erred in directing a verdict for the defendant, and its judgment must be reversed, and the case be remanded to the circuit court, with instructions to grant a new trial.