DORIS B. HOLMES, PLAINTIFF AND RESPONDENT, v. DOYLE S. POTTS, DEFENDANT AND APPELLANT.

No. 9378.
Submitted May 2, 1957. Decided October 25, 1957.
Dissenting Opinion November 25, 1957.
Rehearing Denied December 18, 1957.
319 Pac. (2d) 232.

478

Messrs. Burke & Hibbs, Billings, for appellant.

Messrs. Lamb & Galles, Billings, for respondent.

Mr. Rexford F. Hibbs and Mr. Franklin A. Lamb argued orally.

MR. JUSTICE CASTLES:

This is an appeal from a judgment on a verdict, a new trial having been denied. Hereafter the parties will be referred to as they appeared in the trial court.

The judgment was for the plaintiff in the amount of $6,000, with interest from February 15, 1949. The action was filed upon an account allegedly stated on that date. The plaintiff's complaint recited that the defendant was indebted to her for services which she later testified were rendered as part time bookkeeper for defendant over some seven years, followed by more than two years of full time secretarial assistance in defendant's office, there being no dispute as to this latter period.

Plaintiff's complaint also recited that a wage account was arrived at, and then stated, between plaintiff and defendant on the above date; that by this calculation defendant owed plaintiff $8,400 in back wages as of the close of the prior year; that up to the time plaintiff filed her action, defendant had made only two payments on this past due wage account, $1,000 in June 1950, thirteen months after the account allegedly was stated, and an additional $1,400 the following March, a month after plaintiff's employment ended and two months before plaintiff filed suit. Plaintiff treated these payments, and the time the alleged statement of the account had been in defendant's possession, as an admission that the account had been stated. We shall refer to these two points at the conclusion of this opinion.

Defense was a denial of an account stated. The answer admitted plaintiff's employment, but alleged that any back wages still owing were part of a running account between the parties, with offsetting credits owing to defendant, leaving a net total balance upon a total reckoning of all accounts between plaintiff and defendant of only $495.35 still due. This the defendant agreed to pay. It is observed that the answer did more than just generally deny an account stated. It affirmatively pleads a running account. The reply in turn denies the running account.

Defendant categorically denied that he had ever agreed to state any account with plaintiff. At trial defendant unsuccessfully offered testimony to prove that the writing plaintiff introduced as the prepared stated wage account was prepared for an entirely different purpose. It was also offered to prove that the discrepancies implied by defendant had existed between plaintiff's part time pay and employment, and the total balance plaintiff claimed still due her, which facts *made it improbable* that defendant would have stated any account with plaintiff on plaintiff's figures. The trial court treated the defendant's answer as only a plea of general denial, and the court refused to admit this testimony. Whether this was error is the problem of this appeal.

As to how the account had been stated, plaintiff testified that she met defendant at his office the evening of February 15, 1949, and discussed her wages paid and unpaid from the start of her employment in June, 1941, through December, 1948, during which time, except late in 1948, no wage payments to her had been made; that plaintiff made a work sheet and then gave this work sheet to defendant, who wrote in the amounts to be set down as still owing for the years 1943 through 1948; that plaintiff thereupon added the credits for all amounts paid, after which defendant subtracted these credits and added up the amount of the wages still due, the total coming to $8,400; and, finally, that plaintiff then took all the figures, transcribed them to another sheet of paper, destroyed the work sheet, gave the transcribed original to defendant, and kept the copy.

Defendant's testimony confirmed that he was present on February 15, 1949, as plaintiff alleged. However defendant insisted he was not present to state a wage account with plaintiff, but to demand that plaintiff complete, that night and without further delay, information for an audit required about defendant's business and needed the following day under a deadline in litigation. It is assumed this litigation did not involve plaintiff, but what it did involve does not appear. Defendant denied all details of

plaintiff's testimony, which by plaintiff's interpretation supported her claim that the wage account had been stated.

The record shows that the original copy of the transcribed work sheet was produced at the trial by defendant's present attorney from this attorney's office files. It was admitted without objection, as plaintiff's exhibit No. 1. Plaintiff's only other exhibit was the letter quoted below and the envelope in which it was received. Plaintiff was her only witness.

The work sheet figures for the years 1943 through 1948 appear again in the trial record as part of the audit report introduced in entirety as defendant's exhibit C, and purporting to be the complete audit defendant testified was being prepared for the litigation involving defendant, out of which the deadline that prompted the meeting with plaintiff had come.

These work sheet figures indicate an annual wage of $1,200 for the years 1943 through 1946; $1,800 for 1947; and $2,400 for 1948; a total of $9,000 for the six year period; on which $600 was shown as paid in three checks between July and November, 1948. With the exception of the $600 paid after full time employment began, these figures showed no wage payments whatsoever received by plaintiff between March 31, 1942, and December 31, 1948. Standing alone this is most unusual.

Defendant contended that plaintiff's true part time wages were $40 monthly, and her part time services were as bookkeeper. The latter was not controverted. Defendant also insisted that he had never seen plaintiff's wage figures contained in the audit report until they were shown to him in his present attorney's office the day before the trial for plaintiff's wages began, after plaintiff demanded they be produced at the trial.

Plaintiff testified that on several occasions following the date she assigned for stating the account, she demanded her back pay, always to be put off, except for the $1,000 and the $1,400 above noted, the $1,400 being mailed by defendant with a letter reading: "Enclosed find Bank Draft for $1,400.00. I

haven't got settled with Bill. Try and have some more a little later. /s/ Doyle.''

To the evidence directed to these points there was little objection by counsel for either party. However, thereafter when the defendant attempted to attack the entire account by offering to prove the conditions of plaintiff's employment, her hours of work, the reasons her employment was increased to full time, the causes prompting preparation of the work sheet wage figures as a part of defendant's business audit report, and the improbability that defendant would have stated an account upon the figures plaintiff alleged, plaintiff's counsel repeatedly objected that such proof could be received only upon a special plea of fraud, error or mistake. Plaintiff's objections were regularly sustained.

What has been summarized from the testimony of the parties is sufficient to show that plaintiff and the court took the position that once an account had been stated it could not be opened for fraud, or surcharged with items improperly omitted, or falsified for items improperly included, unless by way of confession and avoidance under a special plea of fraud, gross mistake or material error. This position is sound but, as will be shown, it is irrelevant to a defense which entirely denies that any account whatsoever was stated.

What has been summarized likewise sufficiently shows that the defendant's position was an attack by a plea in bar on the ground that no account had ever been stated, so there was nothing upon which a fraud, mistake or error could be surcharged, and that under such circumstances defendant required no special pleading and could impeach the account at large and in its entirety by any proof relevant under a general denial, including evidence that the circumstances were such as to render it completely improbable defendant would have agreed to state the account as alleged. This likewise is sound.

So far as we can determine, this point has never been squarely decided in this state. Counsel for both parties have ably briefed the law and argued their contentions. Among the cases counsel

cite, two actions on accounts stated should be mentioned. Each involves alleged frauds perpetrated on a corporation by its officers. In each a general denial was interposed but in each case the defense was an attempt to surcharge for fraud rather than to impeach at large. In both cases no question was raised that an account had not been stated, and in neither case was there any offer of proof of improbability.

The first of these cases, one on which plaintiff lays great stress, is Mayger v. St. Louis Mining & Milling Co., 68 Mont. 492, 219 Pac. 1102, 1103. In this action the defendant corporation answered a plea of account stated with a general denial. The litigation continued over several years and evidently involved an interfamily dispute. A later amended answer specially pleading fraud was refused as tardy. Defense was grounded on testimony inferring collusion between the corporate officers and lack of corporate authority to state the account alleged. The decision holds that corporate authority existed and that no *mala fides* were apparent. Speaking for a full court, in language repeated by the trial judge while stating his position in the present case, Chief Justice Callaway in the Mayger case said:

"The agreement resulting in the account stated having the force of a contract the plaintiff must recover upon it, or fail in the action. Upon its answer, the defendant, *in order to prevail must show that there was not any account stated*, or that it has paid the amount alleged to be due. Further the defendant may not go, in the absence of a pleading alleging fraud, error, or mistake in the ascertainment of the balance, or in reaching the agreement resulting in the account stated. \* \* \*(Emphasis supplied).

"It is unnecessary to refer to these contentions further [alleged malefactions by corporate officers] than to reiterate that in the absence of a pleading on behalf of the defendant alleging fraud, error, or mistake, it is not permissible to inquire into the items which made up the account stated, nor into the *bona fides* of the transaction."

The Mayger case is not relevant here because, although a

general denial was pleaded, the defense, that no account had been stated, was never raised under defendant's attempted proof of fraud. In fact, plaintiff recovered on the account as allegedly stated.

The other of the two decisions to be mentioned is the case of Gordon Campbell Petroleum Co. v. Gordon Campbell-Kevin Syndicate, 75 Mont. 261, 242 Pac. 540. Examination of the original transcript shows both a general denial and a special plea of fraud. Evidence of corporate manipulation by plaintiff was received, but under the special plea. Defendant successfully impeached the alleged account stated, but the decision contains no rule as to evidence admissible solely under a general denial pleaded in bar of an account stated.

As stated above, we find no Montana decision specifically ruling on the admissibility of evidence of "improbability," whether under a plea of general denial or a special plea of fraud, error or mistake.

Recognizing the novelty of the question and the probability of appeal, the court trying the present case carefully stated its position, as follows:

"Court: The action being on an account stated, the Court takes the view that the plaintiff is limited in her proof to proof of the contract agreement * * * and that the defendant is limited in his proof to a showing that there was no account stated and to any facts which would contradict the statements made by the plaintiff in her proof. * * * If the defendant has any proof to make of contradictory statements * * * or * * * any proof of facts which facts in themselves are a direct contradiction of the fact that an account stated was made, such testimony will be admitted. * * * The position taken by the plaintiff is that there was an agreement reached between them as to the amount that was due to her and that an account was stated between them as of date February 15th, 1949. If she sustains the position taken by her in her complaint and her proof, she is entitled to recover on the account stated. If the defendant sustains the position taken by him in his

answer, that is a denial of an account stated, and his proof that there was no account stated, the plaintiff cannot recover. *The Court will not receive evidence which merely shows an improbability of the statement of the plaintiff being true or the improbability that an account was stated * * * if I am in* error, you will be in a position to raise the question clearly, I think." Emphasis supplied. This is likewise sound, except as to the court's position on evidence of improbability.

Defendant assigns seventeen specifications of error. The first eleven go to the court's refusal to admit defendant's offered testimony, the remaining six to the court's refusing instructions offered by defendant.

As to the instructions refused, and except that defendant's proposed instructions accentuate the court's instructions by adding detail from the testimony, we find no substantial variance between the instructions the court gave and the instructions the court refused. No prejudicial error was committed by the court in refusing defendant's proposed instructions.

Such, however, is not the case with the eleven specifications predicated on the court's refusal to admit defendant's offered proof generally attacking the entire account, and especially with defendant's offers five and six specifically going to improbability.

Defendant's first three offers of proof concerned plaintiff's rate of pay, her duties, and the defendant's theory of the true purpose for preparing plaintiff's part time wage figures. The fourth offer concerned *agreed value* of plaintiff's services, and the fifth concerned the *reasonable value* of these services.

These five offers of proof were all intended to establish that since, according to the defendants, the part time services were both agreed and reasonably of the value of no more than $40 monthly, and since according to defendant the figures of the work sheet were not prepared as a wage account stated, it would be improbable that defendant would state an account with plain-

tiff for such part time services on the higher figures alleged by plaintiff.

Defendant's sixth and seventh offers sought to confirm the position he took in his prior offers by additionally offering to prove that subsequent to the date of the alleged accounting, defendant made requests for a statement of back wages defendant still owed plaintiff.

Offers eight and nine were made to prove mistakes in the wage settlement figures. Number eight was that defendant had a running account with charge backs against plaintiff, and number nine was that upon a complete reckoning of all charges and all credits between plaintiff and defendant, to strike a balance that would be final for all matters between them, the net total due plaintiff was the sum of $495.35 as claimed by defendant, and not $6,000 as claimed by plaintiff. As a part of defendant's entire defense of *no* account stated, this proof was admissible.

For whatever value it might have been to defendant, this evidence should have been admitted as part of an attack on the entire account admissible under a general denial. Excluding it was prejudicial error. As will appear below, the evidence was admissible to impeach a stated account, whether or not fraud, gross error or material mistake was specially pleaded.

Brief discussion of terms will clarify the issue involved. The action of account stated originated in the law merchant to force accounting and settlements upon a fiduciary. See 1 Am. Jur., Accounts and Accounting, section 26, page 281. At common law, actions on accounts stated were pleaded under the fourth of the common counts in general assumpsit. This count was called *insimul computassent,* meaning "they accounted together." Denials that an account had been stated were pleaded as *non assumpsit, meaning* "he did not undertake" and were interposed in bar as a plea to the general issue. Under the codes the general issue is still variously retained, but it is known now as the general denial. In the present case, a general denial was proper because the defendant sought to deny that he and the plaintiff "accounted together." Defendant's position was

generally that "he did not undertake." This raises the question not of whether plaintiff and defendant accounted together, in fraud, error or by mistake, but of whether or not plaintiff and defendant ever accounted at all. See 6 Bancroft's Code Practice and Remedies, sections 4379 and 4380, pages 5823-5824; 1 Am. Jur., Accounts and Accounting, section 34, page 288; 1 C.J.S., Account, Stated, section 63, page 742; 7 C.J.S., Assumpsit, section 23, page 126; McKenzie v. Poorman Silver Mines of Colorado, 8 Cir., 88 F. 111, and for succinct use of common-law terms, see the brief report of Lyne v. Gilliat, 3 Call., Va. 5.

An account stated is one which has been "examined and accepted by the parties." *Prima facie* it is correct; and in the absence of "fraud or mistake, it is sufficient to warrant a recovery of the amount thereby agreed on." See 75 A.L.R. 1284, annotation beginning page 1283, entitled "Conclusiveness of account stated," citing Mayger v. St. Louis Mining & Milling Co., supra, Norum v. Ohio Oil Co., 83 Mont. 353, 272 Pac. 534.

To state an account is to supplant an old obligation with a new. There must be mutual agreement based on mutual understanding, for without understanding there can be no agreement. A plea to the general issue denies agreement. The evidence admissible under a general denial affirms the lack of mutual understanding necessary to reach an agreement. There can be no accounting together so long as either party fails to undertake. "Consent is not mutual, unless the parties all agree upon the same thing in the same sense." R.C.M. 1947, section 13-316. "There must be the meeting of two separate and independent minds * * *." Gordon Campbell Petroleum Co. v. Gordon Campbell-Kevin Syndicate, supra, 75 Mont. at page 269, 242 Pac. at page 541. "To establish an account stated there must be a contract between the parties, that is, an express or implied promise by the debtor to the creditor." 6 Williston, Contracts, (Rev. Ed.) section 1862, page 5227, citing Hough v. Rocky Mountain Fire Ins. Co., 70 Mont. 244, 224 Pac. 858.

"An account stated presupposes an absolute acknowledgment or admission of a certain sum due, or an adjustment of accounts

between the parties, the striking of a balance, and an assent, express or implied, to the correctness of the balance. If the acknowledgment or admission is qualified, and not absolute * * * there is no account stated." 1 Am. Jur., Accounts and Accounting, section 23, page 277.

"Account stated must be understood as final adjustment of demands and amount due; and *an account rendered for another purpose,* or showing that it is not final, is not sufficient on which to predicate an account stated * * *. A partial settlement of the accounts without arriving at any balance is not sufficient to constitute an account stated." 1 C.J.S., Account Stated, sections 25 and 26, pages 704, 705. See, also, Holtzman v. Hopwood Realty, Inc. 77 Ohio App. 515, 65 N.E. (2d) 409, 413, rehearing denied Ohio App., 68 N.E. (2d) 239, wherein it is said: "The record is silent as to a meeting of the minds of the parties involved before the execution of this document. Holtzman testified that Hopwood requested him to sign the document so that Hopwood could settle certain lawsuits in which Holtzman was involved. Clearly, this document was not intended by the parties to be a settlement of their accounts. This Court approves the judgment of the trial Court in finding that the document in question did not constitute an account stated."

Of the Montana decisions on accounts stated, Chief Justice Brantly's opinions for the full court in Martin v. Heinze, 31 Mont. 68, 77 Pac. 427, and Johnson v. Gallatin Valley Milling Co., 38 Mont. 83, 98 Pac. 885, have been controlling for many years. They rule that an account, once *it is stated,* may be surcharged for fraud, error or mistake only upon a special plea. The latter opinion quotes from Chappedelaine v. Dechenaux, 4 Cranch 306, 2 L. Ed. 629, to declare the public policy underlying the rule:

" 'No practice could be more dangerous than that of opening accounts which the parties themselves have adjusted, on suggestion supported by doubtful or by only probable testimony'."

These and other similar rulings have been reviewed at length

and confirmed by this court in Norum v. Ohio Oil Co., supra, 83 Mont. at pages 361-362, 272 Pac. at page 537, and again in Pankovich v. Little Horn State Bank, 104 Mont. 394, 66 Pac. (2d) 765.

However the problem is not the sanctity of an account stated, but whether any account was stated. At best it is *prima facie* evidence only. Johnson v. Gallatin Valley Milling Co., supra. It may be widely attacked. The defendant may show that the parties never accounted at all. Mayger v. St. Louis Mining & Milling Co., supra. The defendant may prove any defense which destroys the plaintiff's cause of action, including the defense of improbability. See, also, 6 Williston, Contracts (Rev. Ed.), section 1864, page 5236.

"The defense that no account was stated may be raised on the general issue. And under a denial of an allegation of an account stated, the defendant may show the pre-existing relation and transactions, as tending to *show the inherent improbability* of his having acquiesced and promised as claimed." 1 Bancroft's Code Pleading Practice and Remedies, Ten Year Supplement, section 785, page 435. Emphasis supplied.

Regardless of fraud or mistake it is a defense to action on account stated, that none was stated. 1 C.J.S., Account Stated, section 59 b, page 741.

"Since defendant may, under a general denial or general issue, show any fact which destroys plaintiff's cause of action, in an action on an account stated he may prove under a general denial or the general issue that no account was stated. *Accordingly, he may introduce evidence of the improbability* of his assent to an account rendered; and so, where the original account was for services rendered, he may prove the nature of the services and their value, or that no services were rendered." 1 C.J.S., Account Stated, section 63 bb, pages 748-749. Emphasis supplied.

As held in the ruling cases of Martin v. Heinze, supra, Johnson v. Gallatin Valley Milling Co., supra, it is true that when the account stated is admitted, the parties cannot go back of it

and attack the original items of the account except upon proper averments of fraud, error or mistake. But this rule does not apply in determining an issue as to whether or not there was an account stated, and where the defendant denies the stating of any account he may show the inherent improbability of his agreement to such an account, and to that end evidence is admissible of at least the general nature of the circumstances of the business between the parties and the character of the objections made by the defendant to the items of the alleged account stated, although no fraud or mistake is alleged. 2 Bancroft's Code Pleading, section 789, pages 1117, 1118.

The aforementioned Montana decisions are in conformity with Swords v. Occident Elevator Co., 72 Mont. 189, 232 Pac. 189, wherein this court held that all defenses in bar are admissible under the general issue, *except matters of confession and avoidance.*

Decisions from various states, briefly excerpted or summarized below, support this rule:

"The rule that an account stated can only be attacked for fraud, mistake, or manifest error does not apply in a case where the existence of the account stated is denied. * * * The evidence offered by the defendant and erroneously excluded was not offered for the purpose of impeaching the account, but as tending to disprove the plaintiff's claim that an account had been stated." Consolidated Machinery & Wrecking Co. v. Harper Machinery Co., 190 App. Div. 283, 180 N.Y.S. 135, 137.

Coffee v. Williams, 103 Cal. 550, 37 Pac. 504. Appeal from a judgment for defendant and order denying new trial; farming and stock raising partnership; evidence of improbability erroneously excluded; reversed and remanded for new trial.

Steinmetz v. Grennon, 106 Or. 625, 212 Pac. 532. When defendant denies account stated he may show any facts tending to disprove plaintiff's cause of action, including evidence showing the inherent improbability of the defendant having agreed to the alleged account.

E. W. McLellan Co. v. East San Mateo Land Co., 166 Cal. 736,

137 Pac. 1145, 1147. "But, where the defendant has raised an issue regarding his assent to the alleged account stated, he may introduce any evidence tending to show he did not so assent."

Reid v. Topper, 32 Ariz. 381, 259 Pac. 397. Defense that no account was stated may be raised by defendant on general issue.

Gordon Stores Co. v. Rubin, 39 N.M. 100, 41 Pac. (2d) 276. Decision holds improbability may be shown.

Mayer Coal Co. v. Stallsmith, 89 Kan. 81, 129 Pac. 831. Under a general denial, defendant may show any facts which destroy plaintiff's claim.

Rosenbaum v. McEven, 20 Colo. App. 58, 131 Pac. 780. Both parties must intend to make a final adjustment.

Woodson v. Leo Greenwald Vinegar Co., 220 Mo. App. 831, 272 S.W. 1084. Judgment for plaintiff reversed for error in excluding evidence of improbability.

A recent Idaho case, Keane v. McFee, 75 Idaho 541, 275 Pac. (2d) 960, at page 968, states: "This conclusion is further strengthened by the proposition that under a general denial, a defendant may show any facts and circumstances showing the improbability of having agreed to the account as rendered and claimed to be an account stated. [citing cases]."

It is interesting to note that the Idaho Court referred to the Montana case, Mather v. Musselman, 79 Mont. 566, 257 Pac. 427, as to some extent announcing a doctrine contrary. However, we have heretofore pointed out the difference in the Montana cases upon which observations in the Mather v. Musselman case were predicated. The Mather v. Musselman case states, 79 Mont. at page 581, 257 Pac. at page 433, in keeping we believe with our opinion in this case that "This court has likewise held that even an account stated is but strong prima facie evidence of its correctness and does not create an estoppel (Johnson v. Gallatin Valley Milling Co., 38 Mont. 83, 98 Pac. 883), and in Martin v. Heinze, 31 Mont. 68, 77 Pac. 427, the distinction between an

account stated and an open unsettled account in this regard is pointed out.

"Whereas an account stated partakes of the nature of a contract between the parties, and, in order to prove omission from or mistakes in the statement, they must be pleaded, here we have merely an open and unsettled account between the joint adventurers, on which Musselman rendered an account now challenged by plaintiff, and, as, in the case of any open account, defendants were entitled, under their general denial, to show any facts tending to defeat plaintiff's prima facie case."

From the foregoing it is manifest that when the court excluded defendant's offered testimony going to improbability, the court departed in error from the general rule it had correctly announced in the statement of the position it would take under the general denial.

When this matter is again tried, the presumption of acquiescence arising from defendant's retention of the writing evidencing the alleged account stated should be fully developed by testimony. Defendant denied knowledge of the writing and took the position that the payments made after the writing was prepared were to apply on an open account and, when increased by credits due defendant, which credits were never made clear during the trial, would reduce the unpaid back wages from $8,-400 to $495.35. This difference is so substantial that if no account was stated between the parties their transactions require re-examination to determine what the proper balance may be.

Whether or not all items between parties stating an account must be included and a final general net balance struck before their actions will effect the stating of an account need not be decided in the present case. The holdings are in dispute. 1 C.J.S., Account Stated, section 26, page 705; 1 Am. Jur., Accounts and Accounting, section 22, page 276. It should be observed, however, that no more fertile source of multitudinous litigation can be imagined than stating accounts piecemeal.

The applicable section of the Restatement of Contracts reads as follows:

"(1) Matured debts are discharged by a manifestation of *assent* in good faith by debtor and creditor to a stated sum as an accurate computation of the amount of the matured debt or debts due the creditor, or if there are cross demands as the amount of the difference between the *total indebtedness due one party and the total indebtedness due the other party.* A new duty arises to pay a sum so fixed. [Emphasis added].

"(2) Retention without objection by one party for an unreasonably long time of a statement of account rendered by the other party is a manifestation of assent within the rule stated within Subsection (1)." Restatement, Contracts, section 422, pages 793, 794.

Wigmore gives this rule: "In one situation, however, there has been a uniform rule, namely, that the failure to dispute an *account rendered*, after the lapse of a reasonable time, amounts to an admission of its correctness." 4 Wigmore, Evidence (3d Ed.), section 1073, pages 89, 96.

Plaintiff may urge the presumption of acquiescence; under a general denial defendant may dispute the presumption by whatever relevant evidence he can produce including evidence of improbability.

"Retention for an unreasonable time, without objection, of a statement of an account rendered showing the net balance due *prima facie* shows assent to its correctness and, therefore is *prima facie* evidence of an account stated. * * *

"Failure to object to an account does not, as against the party to whom it was presented, conclusively establish its character as an account stated, but merely raises a presumption to that effect, and his conduct therein is open to explanation. * * *

"The presumption * * * may be rebutted by showing facts inconsistent with it * * *." 1 C.J.S., Account Stated, section 37, pages 715-716.

But, the foregoing rules on acquiescence to an *account rendered* for an unreasonable time, thereby making it an *account stated,* do not come into play in the instant case until it is established by a preponderance of the evidence, or it is ad-

mitted that an *account was rendered for the purpose of arriving at an accounting* by the debtor and creditor as discussed in the early part of this opinion.

Much of which appears in the dissent filed long after the majority opinion is premature at this stage of the case, and presupposes and assumes the fact to be that an account was rendered for the purpose of arriving at a settlement and that thus an account became stated. This may or may not be the facts found by the jury on retrial upon development of the defendant's evidence.

However, we are not to be understood, as here holding, that defendant's retention either was or was not for an unreasonable time. This is one of the matters that should be developed and submitted upon a retrial. See 1 Am. Jur., Accounts and Accounting, section 28, pages 283-284, for examples of reasonable and unreasonable time for retention of an account stated.

What has been said heretofore disposes of this appeal. However, we feel it pertinent to make one further comment to show another reason why we would reverse the trial court. The court and the respondent treated the question involved as one under a plea in bar or a general denial. An examination of the answer filed and the reply thereto shows there was more than just a general denial. The answer admits the services performed, denies there was an account stated, affirmatively alleges there was a running account between the plaintiff and defendant, denies specifically an indebtedness of $6,000, but asserts and admits that the sum of $495.35 was due and owing and offers to pay. The reply admitted the running account to the alleged date of the stating of the account.

The plaintiff then had notice that she would be put to proof of not only the alleged account stated, but also the details of the running account with a specific sum due as alleged by the defendant. The evidence offered by the defendant was admissible for that purpose.

The judgment is reversed and the case remanded to the trial court for new trial.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE ANGSTMAN, concur.

MR. JUSTICE ADAIR, dissenting.

I find no reversible error in this case.

I therefore dissent to the majority opinion which nullifies the jury's verdict—sets aside the judgment entered in conformity with such verdict—sends the suit back to the district court for another trial and makes the unpaid office worker pay to her debtor employer his costs on this appeal.

Unless there was some prejudicial error committed by the court during the progress of the trial, we must assume after verdict rendered for the plaintiff that the testimony introduced by her is true. Plaintiff's testimony presents the following facts:

Miss Doris B. Holmes, plaintiff, is an experienced typist, stenographer, bookkeeper and office worker. At the time of the trial she resided at 611 North 31st, Billings, Montana.

Doyle S. Potts, defendant, is an experienced business man. At the time of the trial he resided at 2091 Poly Drive, Billings, Montana. At all times here involved the defendant Potts owned and operated a farm machinery retail sales business conducted under the name of Potts' Machinery, which business he personally conducted in the Potts' building located at 1201 First Avenue North in Billings, Montana.

On June 1, 1941, the defendant Potts employed the plaintiff, Miss Holmes, as a part-time bookkeeper, stenographer and office assistant at the agreed starting wage of $40 per month. Thereafter Miss Holmes continued in the employ of Mr. Potts for a period of nine years and nine months.

At the time Miss Holmes entered upon her part-time work for Mr. Potts she was a regular full-time employee of the Billings Electric Company in whose employ she continued for some four years and upon leaving the employ of the Electric Company, she accepted full-time employment with Heald Motor Supply of Billings which latter employment ended in the year

1947 following which Miss Holmes ceased working part-time and entered upon full-time employment with the defendant Potts, which full-time employment for the defendant was not terminated until February 28, 1951. During the course of this employment, Mr. Potts became considerably delinquent and in arrears in the payment of the salary earned by, and due to, the plaintiff.

In December, 1948, the defendant Potts employed a firm of certified public accountants, of which Mr. R. R. "Bob" Mountain was a member, to examine and audit defendant's books, records and accounts and to set up a new set of books for the defendant. At that time the defendant had no records that showed the amount of salary earned but not paid to the plaintiff, and, on his cross-examination at the trial, the defendant testified that there then were *"no complete records,"* showing the amount of his indebtedness to plaintiff.

Mr. Mountain commenced his examination of defendant's books and accounts in December, 1948, but due to the difficulty of obtaining from defendant's books, records and accounts the data required therefor he did not complete his audit until March 1, 1949, on which date he and his firm made and submitted to the defendant, Doyle S. Potts, a written report of their examination and audit of defendant's books and accounts for the year which ended December 31, 1948, which report was received in evidence at the trial without objection as Defendant's Exhibit "C" to which we shall later advert.

The evening of February 15, 1949, the defendant Potts and the plaintiff Miss Holmes spent working together in the Potts' Machinery offices at Billings preparing a complete statement of Miss Holmes' salary account covering the entire period of her employment by the defendant to the close of business on December 31, 1948.

As and when the various dates, amounts and other data requisite for an accurate statement of the account were gathered they were noted on a work sheet. Part of the entries on the work sheet were made and written by Miss Holmes and the re-

mainder of the entries were made and written thereon by Mr. Potts. When the figures for all the salary earned and the figures for all the payments made on the salary account had been entered separately on the work sheet, Mr. Potts added each set of figures. He then subtracted the total of the payments made from the total of the salary earned by Miss Holmes. The difference proved to be $8,400 and this sum Mr. Potts wrote on the work sheet as the balance then due and owing from him to Miss Holmes on her salary account. To this balance the two parties then and there agreed. Thereupon and on the same night, February 15, 1949, Miss Holmes typed from the figures and data so noted by each of the parties on the rough work sheet, an original and one carbon copy of the complete statement of the account so stated, settled and agreed upon. The original of the typed *account stated* she then and there gave to Mr. Potts; the carbon copy she kept and the rough work sheet, having served its purpose, "was thrown in the waste basket."

Between February 15, 1949, when the *acount stated* was compiled, agreed to and typed, and March 1, 1949, on which latter date the audit of defendant's books was completed, the original typed *account stated* was made available to Mr. Mountain, the accountant, and to his firm, and Mr. Mountain testified that such original typed account stated formed the basis for the item "Accrued Salary—$8,400.00" appearing in his audit report made and dated March 1, 1949, and that day delivered and submitted to the defendant Potts, to whom it was addressed, and which the defendant Potts introduced in evidence without objection as Defendant's Exhibit "C."

*Audit Report—Defendant's Exhibit "C."* The audit report, Defendant's Exhibit C, so far as is here pertinent reads:

"(Members of American Institute of Accountants)
Offices Rowland, Thomas & Company
Certified Public Accountants
Business Systematizers
Offices—Butte, Billings, Miles City, Montana
W. K. Good — R. R. Mountain — Resident Partners
Billings, Montana
March 1, 1949

"Mr. Doyle S. Potts,
1201 First Avenue North,
Billings, Montana.

"Dear Sir:

"We have examined *your books* and records insofar as they pertain to the business of farm machinery and implement sales and submit herewith our report including as part thereof the following:

"Exhibit 'A'—Statement of Condition—December 31, 1948.

"Exhibit 'B'—Statement of Operations—Year Ended December 31, 1948.

"Schedule '1'—Schedule of Insurance Coverage—December 31, 1948.

"Schedule '2'—Schedule of Depreciation Sustained—1948.

"Scope of Audit

"In addition to the work hereinafter indicated in connection with the various accounts commented upon, our examination included the following:

"1. A detailed examination of one month's sales and cash receipts, including verification of daily summaries, journal postings, postings to the accounts receivable ledger and to the general ledger.

"2. A verification of journal footings for two months for both the cash receipts and sales journal and the cash disbursements journal. Totals were traced to the general ledger.

"3. An examination of purchase and expense accounts. Dis-

bursements reflected by these accounts were vouched by a selective examination of supporting vouchers which in our opinion was sufficient to establish the general authenticity of these accounts.

"Our examination did not include any of *your* interests outside of the farm machinery and implement business.

"Statement of Condition

"Cash on Hand—$251.26.

"Cash on hand was represented by $75.00 change fund and undeposited receipts in the amount of $176.26.

\* \* \* \* \*

"Bank Overdraft—$190.62.

"The checking account, which is carried in the Security Trust and Savings Bank, Billings, Montana, was overdrawn $190.62 as of December 31, 1948. This balance was reconciled with the balance *certified* directly to us by the bank.

"Accounts Payable—$50.00.

"The only accounts payable as of December 31, 1948, was one for $50.00. This account was paid during January, 1949.

"Accrued Interest Payable—$325.78.

"This account represents the amount of interest accrued but not paid as of December 31, 1948, on obligations to the Security Trust and Savings Bank as detailed in subsequent paragraphs.

"Accrued Payroll Taxes—$344.22.

"Accrued payroll taxes for the quarter ended December 31, 1948, in the amount of $344.22 covering employee's withholding tax, Social Security and Montana Unemployment were paid during January, 1949.

\* \* \* \* \*

"Notes Payable—$9,033.35.

"Notes payable are represented by two notes. One note in the amount of $8,800.00, payable to the Security Trust and Savings Bank, was made December 9, 1948, is due March 9, 1949, and carries interest at the rate of six percent. This note is secured by a chattle [sic] mortgage on used farm machinery and auto-

motive equipment. The amount of the liability was *confirmed* directly by the bank.

"The other note, which arose from the purchase of a calculator for $400.00 has an unpaid balance of $233.35 as of December 31, 1948. Payments on this note are made at the rate of $33.33 per month and are current.

"Mortgage Payable—$3,000.00.

"This account represents the balance due on a note to the Security Trust and Savings Bank secured by a mortgage on lots 8, 9, 10, 11, and 12, Block 77, as described above. This mortgage was due December 31, 1948, but was unpaid as of that date. The liability was *confirmed* directly by the bank.

"Mortgage Payable—$7,774.44.

"A real estate mortgage on the East seventy-five feet of Lots 1, 2, 3, 4, and 5 and lots 6 and 7 secures a loan from the Security Trust and Savings Bank made in November, 1945, in the original amount of $15,000.00. The unpaid balance on this loan as of December 31, 1948, as *confirmed* by the bank was $7,774.44. Interest runs at the rate of five percent per annum.

"Inasmuch as the terms of this obligation call for payment at the rate of $250.00 a month, $3,000.00 of the balance due has been shown as a current liability and the balance of $4,774.44 reflected as a long term liability on the Statement of Condition as of December 31, 1948.

"Accrued 1948 Income Taxes Payable—$7,067.57.

"*Your* 1948 federal income tax liability is $6,444.00 and the state income tax due is $623.57.

"Accrued Salary—$8,400.00.

"Miss Doris B. Holmes, bookkeeper, has not drawn her regular salary for six years. The amount of accrued salary due as of December 31, 1948, has been computed as follows:

| | | | |
|---|---|---|---|
| 1943—12 months at | $100.00 | $1200.00 |
| 1944—12 months at | 100.00 | 1200.00 |
| 1945—12 months at | 100.00 | 1200.00 |
| 1946—12 months at | 100.00 | 1200.00 |
| 1947—12 months at | 150.00 | 1800.00 |
| 1948—12 months at | 200.00 | 2400.00 |
| | Total | $9000.00 |
| | Less: Payments made 1948 | 600.00 |
| | Balance Due December 31, 1948 | $8400.00 |

"Doyle S. Potts, Capital—$57,516.50.

"As reflected by the statement of condition, *your* capital investment as of December 31, 1948, was $57,516.50.

## "Statement of Operations

"Exhibit 'B' represents the Statement of Operations for the year ended December 31, 1948. With the exception of the beginning inventory, we were able to make sufficient tests to satisfy ourselves as to the general accuracy of the operating figures. While it is impossible to make an accurate comparison of the operations for 1948 with 1947 or prior years, it appears that the net profit for 1948 is substantially over-stated due to prior under-evaluations of inventories. As an indication of the amount that the current year's operations are over-stated, a comparison of 1948 Cost of Sales was made with the 1947 Cost of Sales. This comparison indicates an over-statement of this year's operations of approximately $8,000.00.

## "Contingent Liabilities

"As previously commented upon, you are contingently liable on notes receivable discounted with the Security Trust and Savings Bank in the amount of $6,852.34. Our examination disclosed no other unrecorded liabilities and *you have confirmed* that Exhibit 'A'—Statement of Condition as of December 31,

502

1948, reflects all liabilities arising from *your* farm machinery and implement business known to *you* as of that date.

"Respectfully submitted,
"Rowland, Thomas and Company
"By /s/ R. R. Mountain, C.P.A.
"Member American Institute of Accountants."
Emphasis supplied.

It was defendant's accountants, Rowland, Thomas & Company and R. R. Mountain, who made the above audit report. They addressed, made and delivered it to their client, Doyle S. Potts. Throughout they were reporting and speaking directly to the defendant. Wherever they used the words *"you"* or *"your"* in their report they meant Doyle S. Potts and none other.

The opening words of the audit report, "We have examined *your* books and records" told the defendant Potts that *his* books and records had been examined.

In the paragraph captioned "Accrued 1948 Income Taxes Payable—$7,067.57" *his* accountants said to the defendant Potts *"Your* 1948 federal income tax liability is $6,444.00 * * *."

In the next paragraph of their report captioned "Accrued Salary—$8,400.00" *his* accountants told the defendant Potts that *his* bookkeeper, the plaintiff, had not drawn her regular salary for years and that as of December 31, 1948, a balance of $8,400 was due her.

In the concluding sentence of their report defendant's accountants told him *"you* have *confirmed* that Exhibit 'A'— Statement of Condition as of December 31, 1948, reflects all liabilities arising from *your* farm machinery and implement business known to *you* as of that date."

Thus, on March 1, 1949, did defendant's accountants tell him that he had *confirmed* (meaning he had assented to,—agreed to, —ratified—placed his O.K. on) the Statement of Condition wherein was listed as one of his debts and liabilities the balance of $8,400 due to plaintiff from him.

It became and was the defendant's clear duty on receiving

the audit report of his accountants on March 1, 1949, to then and there carefully examine and consider each and every statement therein contained, and to immediately inform his accountants of any mistake, error or inaccuracy appearing therein to the end that the audit report be forthwith corrected to show the true and correct facts and figures.

At no time, from its submission to him on March 1, 1949, to the date set for the trial of this action on June 15, 1953, did the defendant ever object to, protest against or even question the truth of his accountants' report and statement to the effect that as of December 31, 1948, defendant was owing plaintiff a balance of $8,400 on her salary account.

Likewise, at no time from February 15, 1949, when plaintiff delivered to him the typed *account stated* showing the same unpaid balance of $8,400 owing her as of December 31, 1948, to May 8, 1953, the date on which he filed his answer did the defendant ever object to, protest against or even question the truth or accuracy of such *account stated*.

It is the law that if a person to whom an account has been rendered wishes to object to it he must do so within a reasonable time. The longer the lapse of time without objection, the stronger becomes the inference of assent. 1 C.J.S., Account Stated, section 40 b, pages 719, 720.

In Thos. O'Hanlon Co. v. Jess, 58 Mont. 415, 418, 193 Pac. 65, 66, 14 A.L.R. 237, 238, this court said: "It is quite generally held that where parties have been engaged in a course of dealings and there is an antecedent indebtedness in favor of one as against the other, and an account or bill purporting to be a statement of the account is rendered by the creditor to the debtor, who retains the same for an unreasonable length of time without objection, this is evidence of his assent to the correctness of the account, and, accordingly, is an account stated."

In Baldwin v. Silver, 58 Mont. 495, 499, 193 Pac. 750, 751, this court said: "Had there been no settlement—of which there is some question in the record—the retention of the statement for an unreasonable length of time without objection is evidence

of assent to its correctness." See, also, Nash v. Clifton, Applegate & Toole, 115 Mont. 457, 144 Pac. (2d) 997, 999; Norum v. Ohio Oil Co., 83 Mont. 353, 272 Pac. 534.

At the trial, defendant's accountant and witness, R. R. "Bob" Mountain, who prepared, signed and submitted to the defendant the above-quoted audit report, being Defendant's Exhibit "C," testified: That he and his firm commenced their examination of defendant's books, records and accounts "very early in December of 1948" and completed such examination on March 1, 1949; that he had seen the original typed *account stated,* being Plaintiff's Exhibit No. 1, which plaintiff swore she typed on the night of February 15, 1949; that, "During the course of our examination, it [Plaintiff's Exhibit No. 1] was made available to us and formed the basis for the items of 'Accrued Salary of $8,400'."; that the item "Accrued Salary" shown in his audit report, being Defendant's Exhibit "C," was taken from Plaintiff's Exhibit No. 1, which latter typed writing was the source of said item; that during the course of the examination and preparation of the audit, the witness had occasion to go over various parts thereof both with the defendant Potts and also with the plaintiff, Miss Holmes; that during such examination so completed on March 1, 1949, the witness had discussed with the defendant Potts the subject of the salary account of Doris Holmes; that such subject was probably discussed with the defendant Potts on more than one occasion as "it was one of those items that *we* knew would be subject to accrual and which *we* had to have a figure of some sort before we could clearly reflect any liability."

To sustain and support their statements and figures set forth in their audit report, Defendant's Exhibit "C," under the caption "Accrued Salary — $8,400.00" defendant's accountants had only the oral, unrecorded discussions and conversations had with both the defendant Potts and the plaintiff, Miss Holmes, relative to plaintiff's unpaid salary account and the original typed *account stated,* Plaintiff's Exhibit No. 1, from which

latter exhibit the audit report figures and account were taken and copied almost verbatim.

Thus in Plaintiff's Exhibit No. 1 is found the only tangible evidence to sustain and support the accountants' statements and figures pertaining to plaintiff's salary account. This important document the accountants kept and retained in their possession until some time between June 8, 1953 (when the written notice to produce the document at the trial was served upon the defendant Potts and his counsel), and June 15, 1953 (the day of the trial), at which time defendant's counsel, Senator Hibbs, produced the document in court and presented it to the plaintiff as "the number one instrument" demanded.

Thus at the trial, and by his own witness, Mr. Mountain—by his own audit report, Defendant's Exhibit "C," and by the typed original *account stated,* Plaintiff's Exhibit No. 1, procured from his own accountants, was it established that some time between February 15, 1949, and March 1, 1949, he, the defendant, Doyle S. Potts, *confirmed,* assented to and ratified as true and correct both the *account stated* of February 15, 1949, and the *audit report* of March 1, 1949.

In June, 1950, Mr. Potts made a payment to Miss Holmes by check in the sum of $1,000 which payment she credited on the *account stated* which reduced the balance owing thereon to $7,-400.

In March, 1951, Mr. Potts mailed and paid to Miss Holmes the further sum of $1,400 by a cashier's check payable to her order and drawn on the Security Trust and Savings Bank of Billings. This payment she also credited on the *account stated* which further reduced the balance owing thereon to $6,000.

In the envelope enclosing the above cashier's check was a letter bearing date of March 27, written on the business letterhead of Doyle S. Potts, and by him signed, which read: "Enclosed find Bank Draft for $1400.00. I haven't got settled with Bill. Try and have more a little later. /s/ Doyle."

Thus did the defendant recognize that there still was an

unpaid balance due and owing, and he would try and have more money a little later to pay thereon.

Mr. Potts has made no further payments on the *account stated* on which there remains a balance of $6,000 and interest owing and unpaid.

On May 24, 1951, by complaint that day filed in the district court for Yellowstone County, Doris B. Holmes, as plaintiff, commenced this action against the defendant, Doyle S. Potts, to recover the balance of $6,000 claimed to be due and owing to her on said *account stated.*

*The Pleadings.* Omitting its formal parts such as the title of the court and cause, the signatures of counsel, the verification and the filing data thereon, Miss Holmes' complaint reads:

*"Complaint.*

"Plaintiff complains of defendant and for her cause of action, complains and alleges:

"I. That the defendant is indebted to plaintiff for work and services performed for the defendant at his special instance and request at the City of Billings, Montana, between January 1, 1943, and December 31, 1948.

"II. That on or about the 15th day of February, 1949, an account was stated between plaintiff and defendant upon which a balance was found and agreed to be due to plaintiff from defendant in the sum of Eight Thousand Four Hundred and no/100 Dollars ($8,400.00); Defendant promised and agreed to pay said sum but has failed to pay the same or any part thereof except the sum of $1,000.00 in June, 1950, the sum of $1,400.00 on March 27, 1951, and there is now past due and owing to plaintiff from defendant the sum of Six Thousand and no/100 Dollars ($6,000.00) together with interest thereon at the rate of six (6) percent per annum from the 15th day of February, 1949.

"Wherefore, Plaintiff prays judgment against the defendant in the sum of Six Thousand and no/100 Dollars ($6,000.00) together with interest thereon at the rate of six (6) percent per annum from February 15, 1949, and for Plaintiff's costs and

disbursements herein incurred and for such other and further relief as may be proper.''

The above-quoted simple complaint is clearly sufficient. It properly and adequately states a good cause of action to recover a balance claimed due on an *account stated*. See Voight v. Brooks, 19 Mont. 374, 48 Pac. 549, cited with approval and extensively quoted from in Chittenden & Eastman Co. v. Leader Furniture Co., 23 Ariz. 93, 96, 97, 201 Pac. 843, being a leading case which is cited as authority in 1 C.J.S., Account Stated, section 63, note 97, page 744, also in 1 Am. Jur., Pleading and Practice Forms, Annotation, page 185. Compare Forms No. 1:301, 1:302 and 1:303 of the last-named authority at pages 184 and 185. Also, see, 1 Hillyer, Annotated Forms of Pleading and Practice, Form No. 194, pages 155, 156.

*Demurrer.* On June 13, 1951, the defendant, Doyle S. Potts, by and through his attorneys, Chapple & Wooster and Robert C. Balsam, served and filed a general demurrer urging only that the complaint ''does not state facts sufficient to constitute a cause of action against the defendant.''

On August 15, 1951, the defendant's demurrer, coming regularly before the Honorable Ben Harwood, district judge presiding, was overruled and the defendant Potts was granted twenty days from that day for filing his answer.

Judge Harwood's ruling and order disallowing defendant's demurrer were correct. The demurrer was wholly lacking in merit. As was said by this court of a similar demurrer in McFarland v. Cutter, 1 Mont. 383, 386: ''We hold this to be a very clear and amply sufficient allegation of an *account stated,* and must consider the demurrer in that regard, as * * * simply frivolous and evidently filed for delay * * *.'' Emphasis supplied.

Following the overruling of defendant's demurrer, his original attorneys, on two separate occasions, obtained and filed written stipulations allowing them further extensions of time for the filing of defendant's answer.

On October 3, 1951, a notice, signed by the defendant Potts,

was served upon plaintiff's counsel and filed in the action proclaiming that the defendant Potts then and thereby "substitutes Burke & Hibbs of Billings, Montana, as his attorneys in the above-entitled case in the place and stead of Chapple & Wooster and Robert C. Balsam."

The record fails to show any other or further act or thing done in the lawsuit for more than one year and seven months after the defendant Potts had thus changed attorneys.

It was not until May 8, 1953, that the defendant Potts subscribed, swore to and filed his answer. Omitting its formal parts such as the title of the court and cause, the signatures of the defendant and his counsel, and defendant's positive verification, the answer reads:

*"Answer*

"Comes now the defendant, Doyle S. Potts, and for answer to the Complaint of the plaintiff herein, admits, denies and alleges as follows:

"I. The defendant admits that the plaintiff performed work and services for the defendant at the special instance and request of the defendant at Billings, Montana, between the dates of January 1, 1943, and December 31, 1948, *and thereafter to the 28th day of February, 1951; and that, in the course of said time, there was a running account between the plaintiff and the defendant and that, as a result thereof, the defendant, was, on the 1st day of March, 1951, indebted to the plaintiff in the sum of Four Hundred Ninety-five Dollars and Thirty-five Cents ($495.35) and that the defendant is yet indebted to the plaintiff in said sum, as a balance due upon said account.* [Emphasis supplied].

"II. The defendant denies each and every allegation contained in Paragraph II of the plaintiff's Complaint and specifically denies that there was on the 15th day of February, 1949, or at any other time, an account stated between the plaintiff and the defendant, and the defendant further denies that he is indebted to the plaintiff in the sum of Six Thousand Dollars ($6,000.00) or any other sum save and except the sum of

Four Hundred Ninety-five Dollars and Thirty-five Cents ($495.35) which sum the defendant is ready and willing to pay.

"III. The defendant denies each and every matter and thing in said Complaint alleged which is not hereinbefore specifically admitted, qualified or denied.

"Wherefore, having fully answered the Complaint of the plaintiff herein, the defendant prays that the plaintiff take judgment for the sum of Four Hundred Ninety-five Dollars and Thirty-five Cents ($495.35) and for no other, further or greater sum and that the defendant be awarded his costs herein expended and such other and further relief as to the Court may seem meet."

*Judge Harwood Disqualified.* On May 8, 1953, the day on which he filed his answer, the defendant Potts also filed in the cause his certain affidavit disqualifying the Honorable Ben Harwood, judge presiding, for imputed bias, whereupon the Honorable Guy C. Derry, a judge of the same district, was called in and accepted jurisdiction of the cause.

On June 8, 1953, Miss Holmes served and filed her reply to the defendant's answer which reply, omitting its formal parts, reads:

*"Reply*

"Comes now the plaintiff and for her Reply to defendant's answer, admits, denies and alleges:

"I. Plaintiff admits that there was a running account between plaintiff and defendant from January 1, 1943, to February 15, 1949, and that on February 15, 1949, the account was stated between plaintiff and defendant and a balance of $8,400.00 was found and agreed to be due plaintiff from defendant.

"Plaintiff admits defendant is indebted to plaintiff but that the sum exceeds $495.35 and is presently in the sum of $6,000.00, together with the interest thereon from February 15, 1949.

"II. Plaintiff denies each and every other affirmative alle-

gation contained in defendant's answer which has not heretofore been specifically admitted, qualified or denied.

"Wherefore, plaintiff prays that she have judgment as prayed for in her complaint."

The above-quoted pleadings (complaint, answer and reply) clearly frame the issues to be tried.

In her complaint the plaintiff properly pleads a cause of action on an *account stated.* Nothing else.

The burden of proof that an account was stated was upon the plaintiff who set it up.

The best evidence rule required that to establish and prove the *account stated,* the plaintiff should procure and introduce the best evidence that the circumstances of her case would allow and this she did.

The primary and best evidence of the *account stated* is the original typed statement of the account itself. But such original typed statement was in the possession of the defendant Potts to whom it was given more than four years before, to-wit, on February 15, 1949, at the time it was settled, agreed to and typed. From that time on all plaintiff had was a carbon copy of the original typed statement and, under the facts of this case, such carbon copy would be considered as secondary evidence, and therefore to be resorted to only after a proper showing that the primary evidence cannot be produced.

However, on June 8, 1953, the plaintiff served upon the defendant and his counsel, and filed in this cause, a written notice to produce at the trial the original typed statement of plaintiff's wage account which notice, omitting its formal parts, reads:

"Notice To Produce At Trial

"To Doyle S. Potts, Defendant and to R. F. Hibbs, his Attorney:

"You are hereby notified and required to produce at the trial of the above-entitled cause, the following instruments or documents:

"1. The statement of the wage account of Doris B. Holmes prepared February 15, 1949, covering the period of June 5,

1941, through the year 1948 and given to you and/or to your accountant, Bob Mountain.

"2. The records, books and financial statement of Potts Machinery Co. and/or Doyle S. Potts, prepared in 1949 and used as a basis for financial information, furnished to the District Court of the Thirteenth Judicial District of the State of Montana, in and for the County of Yellowstone, in conjunction with the hearings, settlement and trial of Civil Cause No. 2385, entitled Doyle S. Potts, Plaintiff vs. Mary S. Potts, defendant.

"You are further notified that in case of your failure to produce the papers herein demanded, plaintiff will offer secondary evidence of their contents.

"Dated this 8th day of June, 1953."

Also on June 8, 1953, the plaintiff served upon the defendant and his counsel a notice of motion for an order allowing plaintiff to inspect, before trial, certain books, records and accounts of defendant, together with the supporting affidavit of plaintiff's counsel which affidavit, *inter alia*, recites:

"That during the early months of the year 1949, one Robert Mountain, an accountant in the office of Rowland Thomas and Co., at the request of the above-named defendant, made an audit, and accounting of the books and records of the above-named defendant and his business known as Potts Machinery Co., and prepared a financial statement showing the assets and liabilities of said defendant and Potts Machinery Co., and specifically, showing the liability of Doyle S. Potts and/or Potts Machinery Co., for wages then due and owing plaintiff, and which said records and books affiant verily believes contains papers and entries showing the statement of account for wages then due and owing Doris B. Holmes and among which records affiant verily believes is the original statement of account between Doyle S. Potts and Doris B. Holmes, of the wages due and owing her and prepared by said parties on or about February 15, 1949;

"That an action is pending in the above-entitled Court between Doris B. Holmes as plaintiff, and Doyle S. Potts as de-

fendant, and that the writings, documents and records in the possession of the defendant and/or his accountants, Rowland Thomas and Co., which the plaintiff is herein requesting an order for inspection, contain competent evidence which is material to the issues and necessary to enable the plaintiff, the moving party herein, to prepare said cause for trial, and inspection is necessary in order to determine the entries made in said documents, records, and books and papers, relating to the wages due and owing the plaintiff from the defendant * * *.''

*The Account Stated—Plaintiff's Exhibit No. 1.* On June 15, 1953, at the commencement of the trial of this action, and following plaintiff's opening statement, defendant's counsel, Senator Hibbs, produced in open court the original typed *account stated* at which time he addressed the court as follows:

''Mr. Hibbs: The defendant would like to reserve its right to make a statement until the time for the commencement of the defendant's case. However, the defendant does want the record to show that since the demand was made upon us to produce a certain piece of paper, we have procured it from the accountants and do have it in court and do now present to the plaintiff the instrument, the number one instrument which was asked for in the motion served on us last Tuesday.''

The writing so produced was received in evidence without, objection, as Plaintiff's Exhibit No. 1. It is on defendant's business letterhead and reads:

''P.O. Box 308 Doyle S. Potts Phone 8723
1201 1st Ave. North
Billings, Montana
''Doyle S. Potts To Doris B. Holmes
''Wages Paid:

| Date | Ck. No. | Amt. | Date | Ck. No. | Amt. |
|------|---------|------|------|---------|------|
| 1941 | | | | | |
| 6/5 | 254 | 40.00 | 4/27 | 664 | 40.00 |
| 7/1 | 297 | 40.00 | 6/4 | 722 | 40.00 |
| 8/8 | 348 | 40.00 | 7/3 | 761 | 40.00 |
| 9/2 | 387 | 40.00 | 8/27 | 840 | 40.00 |

| 10/4 | 432 | 40.00 | 9/28 | 883 | 40.00 |
| 11/19 | 469 | 40.00 | 11/3 | 930 | 40.00 |
| 12/15 | | 40.00 | | | |
| 1942 | | | | | |
| 1/20 | 531 | 40.00 | Paid in Full | | |
| 2/18 | 563 | 40.00 | Social Security Taken | | |
| 3/21 | 600 | 40.00 | Out & Reported. | | |

Wages Owed:

| 1943 — 12 months at $100.00 a month | 1200.00 |
| 1944 — 12 months at $100.00 a month | 1200.00 |
| 1945 — 12 months at $100.00 a month | 1200.00 |
| 1946 — 12 months at $100.00 a month | 1200.00 |
| 1947 — 12 months at $150.00 a month | 1800.00 |
| 1948 — 12 months at $200.00 a month | 2400.00 |
| | 9000.00 |

Less

| Check #5266 — 7/31/48 | 200.00 | |
| #5378 — 9/ 4/48 | 250.00 | |
| #5543 — 11/ 3/48 | 150.00 | 600.00 |
| | | 8400.00 |

"(Authorized Sales and Service)"

*The Issues.* Plaintiff's complaint contains but two paragraphs and defendant's answer contains but two paragraphs.

No issue is raised as to the statements set forth in the first paragraph of the complaint. Such statements are admitted in the first paragraph of defendant's answer. It is elementary that facts admitted in the pleadings need not be proved. Gallatin County Farmers' Alliance v. Flannery, 59 Mont. 534, 539, 197 Pac. 996.

In the second paragraph of his answer defendant denies each and every statement and fact pleaded in the second paragraph of plaintiff's complaint. Thereby are framed and presented the issues and the only issues properly triable in this lawsuit.

There are but five issues, namely:

(1) Was there an account stated?

(2) What balance was stated?

(3) Did defendant agree to pay the balance?

(4) What, if any, sums did defendant pay on the balance stated?

(5) What balance remains unpaid?

*Issue No. 1. Was there an account stated?*

This is the number one issue in this lawsuit.

In the second paragraph of his answer, the defendant Potts, under oath, "specifically denies that there was on the 15th day of February 1949, or at any other time, an account stated between the plaintiff and the defendant."

*Proof and Probability.* (1) On June 15, 1953, precisely four years and four months after it was compiled, settled, agreed upon, typed and delivered to the defendant Potts, his counsel Senator Hibbs, in compliance with the written notice, and demand served upon him and his client Potts but seven days before, produced in open court and presented to the plaintiff, the original typed *account stated* which was marked as Plaintiff's Exhibit No. 1 and received in evidence without objection.

(2) Miss Holmes, the plaintiff, identified Plaintiff's Exhibit No. 1 as the original statement of her salary account which she and the defendant Potts, working together, compiled, stated and agreed upon and which she typed and then handed to the defendant Potts on the night of February 15, 1949.

(3) Miss Holmes, when asked to relate in her own words defendant's conversation with her and to tell what was done on the evening of February 15, 1949, testified:

"He [Potts] asked me for my salary account. In order to compile it I went to the Social Security records which were kept for the total amount of work that was paid me before; wrote down the dates and the amounts of the checks; *then the years that were not included in the books were written down also. :*

"I gave it [the work sheet] to Doyle [Potts] and he sat down at the desk and put the amounts in, yes, he was there: It was

all done at the same time. *He wrote the amounts down for the different years that I had no record of and then for the advancements that I had received.* I took those from the check record also, put that down on the work sheet. *No record was kept of the total amount of salary due me. It was never put in the books.*"

Miss Holmes further testified:

"Q. And was a total or a balance established at that time between you and Doyle S. Potts, of your salary account? A. Yes, sir, it was.

"Q. And who wrote the total down upon the sheet of paper which you were working upon? A. Doyle added it up, subtracted the advances, as I remember.

"Q. Who wrote the total due and owing you of the balance of this particular account, on the sheet of paper on which you and Mr. Potts were working? A. Doyle did.

"Q. After he totaled it up, what was done with the sheet of paper as far as you and Mr. Potts were concerned? A. I made a copy by typewriter, of the complete statement, the original was given him and I kept the carbon copy; the work sheet was destroyed.

"Q. When you say 'destroyed,' what was done with it? A. It was thrown in the waste-basket.

"Q. All right * * * what did you do with the original of the typewritten copy? A. I gave it to Doyle.

"Q. And kept the other carbon copy, typewritten copy yourself? A. That is right.

"Q. Was the balance of this account agreed upon by the two of you at that time? A. Yes, it was agreed upon.

"Q. As being the true balance of your wage account that was due and owing to you for that period? A. Yes, sir."

(4) R. R. Mountain, defendant's accountant and witness, identified Plaintiff's Exhibit No. 1 as a written record made available to him and his firm during the course of their examination and audit of defendant's books in 1949, and by them used as the basis and the source for the items of "Accrued

Salary of $8,400'' in their audit report wherein they stated that plaintiff ''has not drawn her regular salary for six years. The amount of accrued salary due * * * has been computed as follows: * * * Balance Due December 31, 1948 $8400.''

(5) The witness Mountain further testified that during the course of his firm's examination and the preparation of the audit of defendant's books and accounts he discussed with the defendant Potts the subject of plaintiff's salary account and that he probably did so on more than one occasion.

(6) In the audit report introduced in evidence by the defendant's Exhibit ''C'' the witness Mountain and his firm stated, reported and certified to their employer Potts that he, Potts, had *"confirmed"* the accountants' figures and statements in that portion of their audit report wherein they had set forth and stated that the amount of accrued salary due plaintiff then was a balance of $8,400.

(7) The defendant Potts testified: That plaintiff was in his employ, ''for about eleven or twelve years;'' that plaintiff worked for him during the years 1943 to 1948; that ''I know it was somewhere around the middle of February. Well, I had to have an audit to get my books up for the kind of a lawsuit we were having right along. About three weeks trying to get the job done, and finally this *last day,* I had one more day to get it in and *that night* I went down and *I had just to demand to have some kind of records to present to court the next morning for my attorneys,* which had to go through the auditor's office.''

Thereupon the defendant Potts was interrogated and he made answer as follows:

''Q. When you say 'demanded' who did you demand it of? A. Of Doris, she told me it couldn't be gotten out and I told her *we* would just have to have that for tomorrow morning there, *we* just couldn't get by without it because they were forcing me to get the figures through, both on that and also other figures on the reports.

"Q. How long had you been asking her to do this, Mr. Potts? A. In the neighborhood of three to four weeks, or something like that.

"Q. And who was the auditor that they were being prepared for? A. Rowland, Thomas & Company—Bob Mountain of the Rowland, Thomas Company.

"Q. Well, did you see the figures that she got ready for them? A. *I did not."*

The defendant Potts further testified on direct examination:

"Q. Let me re-phrase it slightly and see if we may get it —after the 15th of February, 1949, did Rowland, Thomas & Company prepare an audit for you? A. Yes, afterwards.

"Q. I will show you an instrument which has been marked 'Defendant's Exhibit ''C'',' and ask you whether or not that is the audit that they prepared? A. Yes, it is. * * *

"Q. By whom was it prepared? A. Bob Mountain. * * *

"Q. *And I will ask you whether it was for this audit that you asked the plaintiff, Doris Holmes, to prepare your accounts?*

"Q. You may answer 'yes' or 'no.' A. *Yes, it was.* * * *

"Q. Mr. Potts, Defendant's Exhibit 'C' consisting of the audit was mentioned as dated on Page One of the 1st day of March, 1949; I will ask you respecting that part of the audit which is now admitted in evidence, *do you know of your own recollection when you first examined or went over that part of the audit?* A. *The first I saw of that was the next day after this here paper was served on me for this lawsuit.*

"Q. This lawsuit we have got on now? A. That's right, *that was somewhere two years in May, I believe."*

The defendant Potts, on cross-examination testified:

"Q. You were at your place of business one evening about the middle of February 1949, when Doris Holmes was present in your office, were you not? A. Yes, I was.

"Q. Did you or did you not, on that evening, tell her that it would be necessary to get her salary account and the other records completed because you had to turn records over to your attorneys or accountant the next day? A. I did.

"Q. Is it not true that you also had discussed the fact that Miss Holmes' salary account had not been determined when you were going over the matter with your accountant, Bob Mountain? A. Yes.

"Q. Is it not true that on the evening in question, when you were there, and Miss Holmes was there, that all of the books and records pertaining to the employment of Doris Holmes by you were available to both of you in the office at that time? A. They were not.

"Q. Where were they? A. *There was no complete records.*

"Q. But all of the records in existence pertaining to the employment of Miss Holmes, were in your place of business at that time, were they not? A. I don't know.

"Q. Well, do you know whether they were any place else? A. No, I don't.

"Q. And how long had it been that you were after Miss Holmes with reference to the completion of the records, as you have testified? A. Oh, some time; three or four weeks, over three weeks anyhow.

"Q. And were you down to a definite dead-line the following day? A. We were.

"Q. And had you been having some difficulty getting those records completed? A. I had.

"Q. And did you go down there to the place of business *that night* with the intention of seeing that those records were completed? A. I went down and they had to be there, and I told her *we* had to have them done and she told me it was impossible.

"Q. But that was the purpose of your visit *that night?* A. Yes. * * *

"Q. Will you explain to me and to this jury, why you waited a period of two years before going into the auditing report that was delivered to you in March, 1949? A. *Because I had never paid much attention to that stuff, all I watch is what goes out and comes in.*

"Q. And this auditing report is a summary of what comes in and goes out, is it not? A. Yes.

"Q. And why was it then that two days after the summons was served on you, that you went into the audit report? A. I had asked Mr. Dell to go through and check what we could find on that; also the only way we had was to find our checks and we come to the audit report and what we was reading there and he showed me the front part of that audit report.

"Q. And you want this jury to believe that that is the first time you ever saw it? A. *That's the first time.*"

*Issue No. 2. What Balance was stated?*

In her complaint the plaintiff alleged that "a balance was found and agreed to be due to plaintiff from defendant in the sum of Eight Thousand Four Hundred and no/100 Dollars ($8,400.00)." This allegation the defendant denied in his answer.

*Proof and Probability.* (1) Plaintiff's Exhibit No. 1, the original typed *account stated* of February 15, 1949, states a balance of $8,400 due plaintiff as of December 31, 1948.

(2) Defendant's Exhibit "C", the audit report, completed and submitted to defendant on March 1, 1949, states a balance of $8,400 due plaintiff as of December 31, 1948.

(3) On March 1, 1949, in the last paragraph of the audit report, Defendant's Exhibit "C", the defendant was told that he had *confirmed* and ratified plaintiff's salary account as stated in said exhibit which showed a balance due of $8,400. At no time did the defendant assert that he had not so *confirmed* plaintiff's salary account as it appears and is set forth in his own Exhibit "C".

(4) On her direct examination plaintiff was examined as follows, viz.:

"Q. After February 15, 1949, after the statement which you have just testified was prepared, did you have any conversations with Doyle S. Potts concerning the payment of the $8,400.00 shown due? A. Yes, several times.

"Q. Do you recall now, the dates or the approximate dates when you and he had those conversations? A. No.

"Q. And where did those conversations take place? A. Usually at the office."

*Issue No. 3. Did the defendant promise or agree to pay the balance?*

In her complaint the plaintiff alleged "Defendant promised and agreed to pay said sum but has failed to pay the same." This allegation the defendant denied in his answer.

*Proof and Probability.* (1) Miss Holmes on her direct examination testified:

"Q. And what was said with reference to the payment of the $8400 shown due you? A. Payment was asked several times at different intervals and I received the answer, 'Well, no, I haven't the money right now, but I will pay you some as soon as we get some in extra.'

"Q. Were those the exact words or is that more or less the summary of what was said on these various occasions when you talked to him? A. No, the summary, I am not able to quote the exact words. * * *

"Q. Did Mr. Potts, did he or did he not say that he would pay you as he could get the money in? A. Yes.

"Q. And did he promise to pay you? Did he or did he not promise to pay you on several different occasions? A. Yes, he did."

(2) Plaintiff's Exhibit No. 3 is a letter from the defendant to plaintiff accompanying a cashier's check for $1,400 paid plaintiff which plaintiff applied as a credit on her salary account. The letter concludes "Try and have some more a little later. /s/ Doyle"

*Issue No. 4. What sums did defendant pay on the balance stated?*

In her complaint plaintiff alleged that defendant "has failed to pay the balance found and agreed to be due her or any part thereof except the sum of $1,000 in June 1950 and

the sum of $1,400 on March 27, 1951." This allegation the defendant denied in his answer.

*Proof and Probability.* (1) On her direct examination Miss Holmes testified:

"Q. Did you, at any time, receive any payment on the account? A. Yes, I received $1,000 June 1950, and $1,400 March 27th, of 1951, with the promise that I would receive more as soon as he got certain things in.

"Q. How did you receive the first payment of $1,000 in June of 1950? A. A check was written in that amount, a company check. * * *

"Q. And how was the second payment of $1,400, which you received in March 1951, how was that received? A. I received it through the mail, it was a cashier's check, drawn on the Security Trust & Savings Bank, for $1,400.

"Q. And was there anything with the cashier's check which you received in March 1951. A. There was a note written on the company stationery, that he would send me some more as soon as he got some in."

The defendant Potts on his direct examination testified:

"Q. Mr. Potts, the plaintiff has offered her exhibit No. 3, purporting to be a letter; did you write that letter? A. I did.

"Q. And at that time you wrote the letter, did you send the plaintiff the $1,400 that she has described? A. Yes, I did, a cashier's check.

"Q. Will you tell us whether or not that was sent as a payment on the account stated, which she has described? A. No, it wasn't.

"Q. Well, what was it a payment on, Mr. Potts? A. *It was salary which I knew she had some salary coming.*

"Q. She has testified that you paid her a $1,000 in June, in 1950, did you? A. Yes sir.

"Q. And what do you have to say with respect to whether or not that was a payment of this account stated? A. It was not.

"Q. And on what was it a payment? A. *On the same as*

*the salary that I knew that I had owed her for that period of years when she hadn't drawn her checks.*

"Q. Mr. Potts, you say when she hadn't drawn her checks? A. Yes."

*Issue No. 5.* What balance now remains unpaid on the *account stated?*

In her complaint the plaintiff alleged that there is now "due and owing to plaintiff from defendant the sum of six thousand dollars ($6,000.00) together with interest thereon at the rate of six (6) percent per annum from the 15th day of February, 1949." This allegation the defendant denied in his answer.

*Proof and Probability.* On her direct examination Miss Holmes testified:

"Q. So nothing, subsequent to February 15, 1949, is included in the statement which has been admitted in evidence, marked 'Plaintiff's Exhibit No. 1'? A. No sir.

"Q. What is the balance now past due and owing to you on your wage account from Doyle S. Potts, concerning which you have testified? A. Six thousand dollars.

"Q. Is the $6,000 which you state is now due and owing to you, from Doyle Potts, a part of the amount of $8,400 as shown in plaintiff's Exhibit No. 1? A. Yes.

"Q. And is the $6,000, which is now due and owing to you, a part of the amount which Doyle Potts, subsequent to February 15, 1949, agreed orally to pay you? A. Yes."

*Evasive Pleading.* In the first paragraph of his answer to the complaint the defendant first pleads a clause which reads: "The defendant admits that the plaintiff performed work and services for the defendant at the special instance and request of the defendant at Billings, Montana, between the dates of January 1, 1943 and December 31, 1948" which clause is proper and authorized by the provisions of R.C.M. 1947, section 93-3401, subd. 1, being a "specific admission" of the allegations of the first paragraph of the complaint. However, *immediately* following the above-quoted clause the defendant then inserted

in the first paragraph of his answer a second clause wherein he boldly *pretends* that he "admits" certain matters that are neither alleged nor to be found in plaintiff's complaint.

In this second clause the defendant *pretends* that he "admits * * * *that, in the course of said time, there was a running account between the plaintiff and the defendant and that, as a result thereof, the defendant, was, on the 1st day of March, 1951, indebted to the plaintiff in the sum of Four Hundred Ninety-five Dollars and Thirty-five Cents ($495.35) and that the defendant is yet indebted to the plaintiff in said sum, as a balance due upon said account.*"

It is elementary that to properly raise a triable issue, an answer must be responsive to the complaint. Likewise to be properly available a defense must of necessity be against the claim and demand asserted by the plaintiff. By the above-quoted second clause which has been placed in italics in the answer set forth in full in the forepart of this opinion, the defendant has attempted to convert plaintiff's lawsuit from one on an *account stated* to either an action on a running account or to a suit in equity for an accounting.

That this was and is an action on an *account stated* is the one and only theory on which plaintiff brought, prosecuted and tried her suit. She placed all her eggs in one basket. This she did knowing full well that it has long been the established and settled law in Montana that she must recover upon an *account stated* or not at all.

The pretended *admission,* being the second clause of the first paragraph of the answer, is not responsive to any allegation contained in the complaint. It is a nullity. It tenders no issue. It requires no reply and it is violative of the plain mandate of the statute. R.C.M. 1947, section 93-3401.

The rules of pleading, under our system, and this includes section 93-3401, supra, which prescribes what an answer *must* contain, are designed and intended to prevent evasion.

"Where an admission is not in response to any allegation contained in the complaint, it is a mere nullity, and should

be disregarded. The insertion in a pleading of a clause pretending to admit a fact not pleaded by the opposite party raises no issue, is not capable of being denied, and should not be tolerated." 1 Bancroft's Code Pleading, section 434, page 634.

In Woolsey v. Draper, 103 Or. 103, 105, 106, 201 Pac. 730, 731, 203 Pac. 582, the court said:

"This admission was not in response to any allegation contained in the complaint alleging ownership in her. The admission so inserted is a mere nullity, and does not constitute any allegation of ownership in the wife. It was contended that, inasmuch as no reference to this admission was made in the reply, the title in her stands admitted of record. The insertion into a pleading of a clause pretending to admit a fact not pleaded by the opposite party is not a proper way to plead, raises no issue, is not capable of being denied, and should not be tolerated."

Also, see, Loveland v. Warner, 103 Or. 638, 204 Pac. 622, 206 Pac. 298; Rosenkrantz v. Barde, 107 Or. 338, 214 page 893, 895, 896; Morford v. California-Western States Life Ins. Co., 161 Or. 113, 88 Pac. (2d) 303; Raymond v. State Civil Service Commission, 104 Colo. 458, 92 Pac. (2d) 331, 332.

In 71 C.J.S. Pleading section 108, notes 42-45, page 253, it is said: "Insertion in a plea or answer of an admission of fact not pleaded in the complaint is not responsive and is not capable of being denied, and should not be tolerated, especially when done for the purpose of laying the foundation for parol evidence to vary or contradict a written instrument."

The *account stated,* Plaintiff's Exhibit No. 1, is a typed document. It is a written instrument. It is an agreement that has the force of a contract. "This contract is the cause of action, and the plaintiff must recover upon it, or fail in the action." Martin v. Heinze, 31 Mont. 68, 73, 77 Pac. 427, 428.

Whether a particular action is one upon an open account or one on promissory notes or on an account stated is to be determined from the allegations of the complaint. 2 Bancroft's Code Pleading, section 744, page 1051.

In her complaint in this lawsuit the plaintiff properly pleads a cause of action on an *account stated*. Nothing else.

An action on an *account stated* is probably the simplest civil suit known to law. It is simple to plead, simple to try and simple to prove.

"The term 'stated account' is but an expression to convey the idea of a contract, having an account for its consideration, and is no more an account than is a promissory note or other contract having a like consideration for its support." Hallford v. Baird, 27 Cal. App. (2d) 384, 80 Pac. (2d) 1040, 1042.

"An 'account stated' is, in effect, an admission of indebtedness." Stagg & Conrad v. St. Jean, 29 Mont. 288, 292, 74 Pac. 740, 741.

In Voight v. Brooks, 19 Mont. 374, 375, 376, 48 Pac. 549, 550, this court, after defining an *account stated,* said: "It is strictly evidence of the admission of a debt; it is the acknowledgment of the existing condition of liability between parties. 'From an account stated the law implies a promise to pay whatever balance is thus acknowledged to be due.' [Citing case.] *It is not necessary that there should be an express promise to pay, as appellants contend. On the contrary, there is an implied promise in law on the part of him against whom the balance is found to pay, and action is maintainable thereon.* [Citing cases.] In Heinrich v. Englund, 34 Minn. 395, 26 N.W. 122, it was said of a complaint similar to that under considtration: 'The allegations of the complaint that an account was stated between plaintiffs and defendant, and that upon such statement a certain balance was found due from the latter to the former, fairly mean that the parties had an accounting, and that the balance named was agreed on and admitted as the true balance between them. *To allege a promise to pay this balance was unnecessary, and would really have added nothing to the complaint.* It was sufficient to state the facts showing the duty to pay, without alleging the promise by law from these facts'." Emphasis supplied.

*Effect of Null Admissions.* In the first paragraph of her

reply "Plaintiff admits that there was a running account between plaintiff and defendant from January 1, 1943 to February 15, 1949," but such needless "admission" of such portion of the null and void allegations of the second clause in the first paragraph of defendant's answer is likewise a nullity. Such "admission" tenders no issue and it does not enlarge nor does it have any effect whatever upon the issues properly joined by defendant's general denial set forth in the second paragraph of his answer of "each and every allegation contained in paragraph II of the plaintiff's complaint."

In Davis v. Sullivan Gold Min. Co., 103 Mont. 452, 460, 461, 62 Pac. (2d) 1292, 1296, this court said: "While the effect of a general denial is to put in issue every material allegation of the complaint and cast upon the plaintiff the burden of establishing, *prime facie* at least, the presence of every element necessary to a recovery [Citing case.], *if the defendant desires to go further as a matter of defense, he must do so by special plea,* the office of which is to set up facts which would otherwise not be apparent to the court (49 C.J. 180). In other words, if the defendant desires to do more than controvert the allegations of the complaint by general or special denials, he must in his answer set out 'a statement of any new matter constituting a defense.' Section 9137, Rev. Codes [1921, now R.C.M. 1947, section 93-3401]. Under our system of pleading, payment is 'new matter constituting a defense' and, to be available as a defense, must be pleaded; it cannot be proven, under a general denial, either in bar or mitigation of recovery." Emphasis supplied.

Controlling Decisions Observed And Applied.

"Section 45. We will not make any justices, constables, sheriffs, or bailiffs, but of such as know the law of the realm and mean duly to observe it." Magna Charta, Vol. 1, Revised Codes of Montana, 1947, at page 5.

From a reading of the record now before the Supreme Court on this appeal, it is manifest that counsel for the plaintiff, Miss Holmes, knew the law of this jurisdiction applicable to

an action on an *account stated*, and that he duly observed it in the drafting of his pleadings, and in the trial of plaintiff's case including the registering of timely and proper objections to questions calling for evidence without and beyond the issues presented by the pleadings herein.

It is likewise manifest from his various rulings on the evidence, from his instructions to the jury, and from his various pronouncements from the bench during the trial that Judge Derry knew and that he duly observed and applied the law of this jurisdiction that for years has governed the pleading, trial and submission of an action on an *account stated*.

In Martin v. Heinze, 1904, 31 Mont. 68, 73, 77 Pac. 427, 428, this court said: "An account stated is an agreement between the parties, either express or implied, that all the items are correct. [Citing authorities.] The action is based upon the agreement, the consideration of which is the original account, and the agreement has the force of a contract. This contract is the cause of action, and the plaintiff must recover upon it, or fail in the action. [Citing authorities.] *It is therefore not necessary, nor is it permissible, to prove the items of the original account. They may not be inquired into or surcharged, except upon the ground of fraud, error, or mistake in the ascertainment of the balance* [Citing cases.], *and then only when the fraud, error or mistake upon which the agreement is sought to be impeached is specifically alleged in the answer.*" Emphasis supplied.

In Noyes v. Young, 1905, 32 Mont. 226, 235, 79 Pac. 1063, 1064, this court quoted with approval from Martin v. Heinze, supra, and also said: "Viewing the instrument on which the action is based, we find a positive, unequivocal written admission of indebtedness on the part of appellant payable to Orlena E. Price * * * If this instrument arises from and is based upon transactions had between the parties at its date, it is as purely a contract as is a promissory note that became due on the happening of a contingency, for it acknowledges an indebtedness, and promises to pay it. If it is the result of an

agreement relating to past transactions, it is, in effect, an *account stated*, and as such is a contract on which an action may be based.'' Emphasis supplied.

In Hanson Sheep Co. v. Farmers' & Traders' State Bank, 1917, 53 Mont. 324, 334, 335, 163 Pac. 1151, 1154, this court said: ''This balance disclosed by the passbook, when accepted as correct, became an *account stated* between plaintiff and defendant, as counsel contend, and until changed by other dealings between them with reference to it fixed the amount due the plaintiff *unless fraud, mistake, or error intervened in ascertaining it*. Martin v. Heinze, 31 Mont. 68, 77 Pac. 427; Noyes v. Young, 32 Mont. 226, 79 Pac. 1063.'' Emphasis supplied.

In Johnson v. Gallatin Valley Milling Co. 1909, 38 Mont. 83, 88, 89, 90, 98 Pac. 883, 885, this court reviewed the rules of law applicable to an action on an *account stated* and held that the burden is cast upon the party seeking to avoid it and to open up to investigation the antecedent dealings between the parties, *''to allege in his pleadings the error, fraud, or mistake on which he relies,* and to establish it by clear and satisfactory evidence. \* \* \* *Unless this burden is assumed and sustained by the adverse party, the settlement is conclusive.*

''In Chappedelaine v. Dechenaux, supra [4 Cranch 306, 2 L. Ed. 620], it was said: 'No practice could be more dangerous than that of opening accounts which the parties themselves have adjusted, on suggestion supported by doubtful or by only probable testimony.' In Klauber v. Wright [52 Wis. 303, 8 N.W. 893], the court, after stating that the evidence to surcharge an account should be clear and satisfactory, quoted with approval from the earlier case of Martin v. Beckwith, 4 Wis. 220, as follows: 'Principle and public policy alike require that, when parties, after a full and fair opportunity of examining and deciding upon their mutual accounts, have adjusted and settled them, the settlement should be conclusive. Any other rule would be dangerous and oppressive, and often work the greatest injustice.' In Linville v. State [130 Ind. 210, 29 N.E. 1129], it was said: 'The law favors the settlement of business

transactions by the parties, and when they have made such settlements they will be held bound thereby, in the absence of fraud, mistake, or other illegality. A voluntary settlement of accounts between parties affords a presumption that all items properly chargeable at the time were included. The presumption is not conclusive, but clear and convincing proof that such items were unintentionally omitted is necessary to sustain a subsequent claim to recover them.' Indeed, the rule has application to all contracts. *The party who claims that he should not be bound by his engagements may not avoid them except upon appropriate allegations setting forth the facts showing the fraud or mistake upon which he relies,* and supporting his allegations by evidence sufficiently substantial and definite to overcome the *prima facie* case made against him by the admission that he made the engagements. [Citing case.] If, at the time of stating the account and making the settlement, the adverse party knew of the error, mistake, or fraud upon which he relies, or, with ample means of knowledge at hand, he failed to take advantage of such means of knowledge, there is still less reason that the account should be reopened, and *it will not be permitted except upon proof of fraud or imposition."* Emphasis supplied.

In Mayger v. St. Louis Mining & Milling Co., 1923, 68 Mont. 492, 496, 498, 219 Pac. 1102, 1103, this court said:

"The agreement resulting in the account stated having the force of a contract the plaintiff must recover upon it, or fail in the action. Upon its answer, the defendant, in order to prevail must show that there was not any account stated, or that it has paid the amount alleged to be due. *Further the defendant may not go, in absence of a pleading alleging fraud, error, or mistake in the ascertainment of the balance, or in reaching the agreement resulting in the account stated.* Martin v. Heinze, supra, and cases cited. * * *

"*Here it may be observed that defendant's counsel have taken a wide range in their brief, carrying their contentions beyond the issues made up by the pleadings.* It is unnecessary to refer

530

to these contentions further than to reiterate that, *in the absence of a pleading on behalf of the defendant alleging fraud, error, or mistake, it is not permissible to inquire into the items which made up the account stated, nor into the bona fides of the transaction.*" Emphasis supplied.

In Mather v. Musselman, 1927, 79 Mont. 566, 581, 257 Pac. 427, 433, this court said that in an action on an *account stated* "in order to prove omission from or mistakes in the statement, they must be pleaded."

In Pankovich v. Little Horn State Bank, 1937, 104 Mont. 394, 402, 403, 66 Pac. (2d) 765, 768, this court said: "We do not mean to hold that the correctness of the items of an account stated cannot be inquired into and corrected *in case of mistake or error*. That this may be done is well settled." Emphasis supplied.

In Norum v. Ohio Oil Co., 1928, 83 Mont. 353, 361, 367, 272 Pac. 534, 537, this court said:

"Where, at the time of stating an account and making settlement, the adverse party knew of the error, or should have known thereof, having had ample means of knowledge before him, *such an account will not be reopened, in the adsence of proof of fraud or mistake.* * * *

"The doctrine is settled that, in general, a mistake of law, pure and simple, is not adequate ground for relief. Where a party, with knowledge of all the material facts, and without any other special circumstances giving rise to an equity in his behalf, enters into a transaction affecting his interests, rights, and liabilities, under a misapprehension of the law, courts will not relieve him from the consequences of his own mistake. * * *

"Chancellor Kent says: 'The courts do not undertake to relieve parties from their acts and deeds fairly done on a full knowledge of facts, though under a mistake of the law. Every man is to be charged at his peril with a knowledge of the law. There is no other principle which is safe and practicable in the common intercourse of mankind. *And, to permit a subsequent judicial decision in any one given case, on a point of law, to*

open or annul everything that has been done in other cases of the like kind, for years before, under a different understanding of the law, would lead to the most mischievous consequences. Fortunately for the peace and happiness of society, *there is no such pernicious precedent to be found.* This case, therefore, is to be decided according to the existing state of things when the settlement in question took place'. Lyon v. Richmond, 2 Johns, Cr., N.Y. 51. And all of the later adjudications appear to be in accord with the doctrine so forcibly stated by the learned chancellor.

"The law favors the settlement of business transactions by the parties, and when they have made such settlements they will be held bound thereby, in the absence of fraud or mistake. And, as is made clearly to appear in this case, there was no mistake made by the plaintiff in acceptance of the monthly settlements. He was fully conversant with his rights under the law, as well as the terms of the contract, by reason whereof, under our own previous holding in Johnson v. Gallatin Valley Milling Co., supra, the plaintiff will not be permitted to surcharge the accounts and recover the difference. * * *

"It would be as mischievous as an *ex posto facto* law to permit a subsequent decision to overturn the fair compromises and contracts of individuals made under a different, though incorrect, view of the law. *The community would be in a miserable condition, if at every change of opinion upon questions of law, all previous contracts and settlements were to be overturned.* Men could never know the end of their controversies were such rule to prevail. [Citing case].

"The correct principles of law having been applied to the facts, we are satisfied with the result reached in our previous holding, and find no reason to recede therefrom." Emphasis supplied.

*Concessions In Appellant's Reply Brief.* At pages 2 and 3 of his printed reply brief, the defendant Potts assumes to reply to plaintiff's argument on this appeal and to set forth "the ulti-

mate issue'' with the following disarming concessions and statements, viz:

''So that this court will not be in the least misled we direct particular attention to the following:

''1. We are not proposing that this court reverse or overrule its previous decisions, nor any of them.

''2. We point out that the testimony of the plaintiff, if all of that testimony were believed, and if none of it were controverted, established an 'account stated' (except that one of the essential elements was supplied solely by answer to a leading question—our Specification of Error No. 17).

''3. We are aware, as is this court, that mistake, error and fraud must be pleaded in order to be proved.

''4. We know, as does this court, that 'upon its answer, the defendant, in order to prevail must show that there was not any account stated, or that it has paid the amount alleged to be due'. Mayger v. St. Louis Mining & Milling Co. of Montana, 68 Mont. 492, 219 Pac. 1102.

''5. We do not contend that the defendant should not be 'bound by his engagements' nor are we trying to avoid his engagements. We urge only that he did not enter into an 'engagement,' an 'account stated'. He was entitled to show such facts as he had to offer which would prove that there was no 'account stated'.

''The foregoing matters, admitted by all hands, should scarcely be found in the part of respondent's brief designated as 'Argument'. Their reiteration in that brief should not be permitted to obscure the true issues on this appeal.

''The ultimate issue is *'was there an acount stated?'*

''In the face of the assertion that there was, in fact, an 'account stated', the immediate issue is, *'what evidence may the defendant produce to controvert that assertion?'* ''

*"The Ultimate Issue."* In the above-quoted portion of his reply brief the defendant Potts correctly concedes: The ultimate issue is ''was there an account stated?''

The defendant in his answer, under oath, ''specifically de-

nies that there was on the 15th day of February, 1949, or at any other time, an *account stated* between the plaintiff and defendant.''

An *account stated* is something tangible. It may be seen, touched and handled. It is a writing. It is *"a certain piece of paper,"* an *"instrument."* It is capable of being *produced* in court and of being exhibited to and read by the court and jury.

''An *account stated* is a writing that exhibits the state of the account between parties and the indebtedness claimed to be due from one to another, and if assented to by the debtor, either expressly or impliedly, it becomes a new contract. [Citing cases]. Assent to such a statement is implied from failure to object within a reasonable time.'' Shapiro v. Equitable Life Assur. Soc., 76 Cal. App. (2d) 75, 90, 172 Pac. (2d) 725, 733. Emphasis supplied. Compare Voight v. Brooks, supra; Martin v. Heinze, supra; Johnson v. Gallatin Valley Milling Co., supra; Mayger v. St. Louis Mining & Milling Co., supra; Mather v. Musselman, supra; Norum v. Ohio Oil Co., supra.

Was there such a writing as is above defined? *Was there an account stated?* The plaintiff, Miss Holmes, under oath, responds ''Yes.'' The defendant Potts, under oath, responds ''No.''

In his printed reply brief defendant says ''the immediate issue'' is: What evidence may the defendant *produce* to controvert plaintiff's assertion that there was, in fact, an account stated?

*Evidence Produced By Defendant.* Just what evidence *did* the defendant Potts *produce* to controvert plaintiff's assertion that there was, in fact, an account stated?

*First.* At the outset of the trial on June 15, 1953, and before any evidence whatever had been introduced the defendant Potts, by and through his counsel, Senator Hibbs, *produced* in open court the *writing,* the number one instrument in this case, the original typed *account stated,* the making and existence whereof the defendant had denied under oath.

*Second.* When defendant's counsel *produced the original*

typed *account stated,* at the opening of the trial, he addressed the trial court as follows:

"Mr. Hibbs: The defendant would like to reserve its right to make a statement until the time for the commencement of the defendant's case. However, the defendant does want the record to show that since the demand was made upon *us to produce a certain piece of paper, we have procured it from the accountants* and do have it in court and do now present to the plaintiff *the instrument,* the number one instrument which was asked for in the motion served on *us* last Tuesday."

*Third.* It was only seven days before that plaintiff made demand upon defendant that he *produce* the original typed *account stated* so that when the defendant did *produce* and present such *writing* to the plaintiff she accepted it and promptly and without objection, introduced it in evidence as Plaintiff's Exhibit No. 1 in this case.

*Fourth.* Defendant *produced* as a witness his accountant, R. R. Mountain, who testified: That he and his firm, Rowland, Thomas & Company, certified public accountants, were employed to examine and make an audit report of the affairs of the defendant's farm machinery and implement business; that he and his firm commenced work on their assignment early in December, 1948, and that on March 1, 1949, they completed and submitted their audit report to the defendant; that in the course of such examination and audit the witness Mountain saw and used Plaintiff's Exhibit No. 1, which was made available to him and his firm, and which constituted the source and formed the basis for that portion of their audit report of March 1, 1949, designated "Accrued Salary—$8,400.00" as being the balance owing by defendant to plaintiff on her salary account as of December 31, 1948.

*Fifth.* Defendant's witness Mountain further testified: That while making his examination and audit so completed on March 1, 1949, he discussed with the defendant Potts the subject of plaintiff's salary account, and that he probably discussed such subject with the defendant on more than one occasion as "it

was one of those items that we knew would be subject to accrual and which we would have to have a figure of some sort before we could clearly reflect any liability."

*Sixth.* Defendant *produced* at the trial and, without objection, introduced in evidence the aforesaid audit report so completed and submitted to defendant on March 1, 1949, being Defendant's Exhibit "C" herein.

*Seventh.* Defendant's Exhibit "C" corroborates, confirms and sustains in every particular the figures and statement set forth in the *account stated,* Plaintiff's Exhibit No. 1. Both exhibits set forth plaintiff's salary account for the same periods of time, in the same amounts and state the same balance of $8,-400 owing from defendant to plaintiff as of December 31, 1948.

*Eighth.* Defendant *produced* the audit report at the trial. He placed it in evidence as his Exhibit "C." Thereby he vouched that such report was and is true, correct and worthy of belief. If defendant's Exhibit "C" be true, correct and worthy of belief then it must and does follow that Plaintiff's Exhibit No. 1 also, is true, correct and worthy of belief. It is not possible for defendant to challenge and impeach any material part or statement of Plaintiff's Exhibit No. 1 without also challenging and impeaching his own Exhibit "C."

*Ninth.* When Doyle S. Potts *produced* in court, introduced in evidence and exhibited to the court and jury in this case, his Exhibit "C," the concluding sentence whereof affirmatively shows that on or before May 1, 1949, the defendant had *confirmed* (verified, assented to, agreed upon, corroborated, sanctioned, placed his o. k. upon) his accountants' audit report and statement which showed a balance of $8,400 owing from defendant to the plaintiff, Miss Holmes, for salary which she had earned, but for which she had not been paid, said defendant then and thereby supplied the jury with convincing evidence and the correct answer to the issue: *"Was there an account stated?"* The answer was in the affirmative. The jury's verdict was for the plaintiff and against the defendant for the full sum demanded in the complaint.

*Tenth.* On his direct examination the defendant Potts testified:

"Q. You have heard Miss Holmes testify as to the night of February 15th, 1949, have you? A. Yes, I did.

"Q. I will show you an instrument which has been marked 'Plaintiff's Exhibit No. 1'—have you heard Miss Holmes testify with respect to the making of that instrument? A. Yes, I did.

"Q. I will ask you whether on the 15th of February, or at any other time, Miss Holmes ever delivered that instrument to you? A. *Never did.*

"Q. Did you ever see it before? A. *Yes, I saw it in your office for the first time.*"

It is highly *improbable* that the defendant Potts saw the *account stated,* Plaintiff's Exhibit 1, in Mr. Hibbs' "office for the first time." This would place Mr. Potts' first glimpse of the typed *account stated* somewhere between June 8, 1953, on which date he and his counsel were served with plaintiff's demand and notice to produce the *account stated* and June 15, 1953, the date whereon this most important typed "piece of paper" was actually produced in court, being more than four years after the *account stated* was compiled, typed and handed to the defendant Potts.

*Eleventh.* Again on his direct examination by Mr. Hibbs, the defendant Potts gave the following highly *improbable* testimony:

"Q. Mr. Potts, Defendant's Exhibit 'C', consisting of the audit was mentioned as dated on Page One of the 1st day of March, 1949; I will ask you respecting that part of the audit which is now admitted in evidence, do you know of your own recollection when you first examined or went over that part of the audit? A. *The first I saw of that was the next day after this here paper was served on me for this lawsuit.*

"Q. This lawsuit we have got on now? A. *That's right, that was somewhere two years in May, I believe.*"

*Twelfth.* On his cross-examination by plaintiff's counsel the defendant Potts testified:

"Q. Your testimony, as I recall it, was that you have been in the farm machinery business here in Billings for about fourteen years, is that correct? A. Yes.

"Q. And when you were at Custer, Montana, were you in any other business, other than farming at Custer? A. Automobile repair shop.

"Q. So that for fourteen years here in Billings and then for some period of time prior to that at Custer, you have been what we commonly know as a 'business man' is that correct? A. Yes sir.

"Q. And during that time, in the operation of your business, both in Billings and in Custer, it was necessary to maintain and keep competent books and records, was it not? A. Yes sir.

"Q. And be familiar with the operation of your business? A. *Well, I never watched the books too close myself.*

"Q. And you want this jury to believe that an audit report dated March 1, 1949, was not examined by you until a few days after the summons was served on you in this case, which would be shortly after the 24th day of May, 1951? A. *It wasn't completely examined.* * * *

"Q. Mr. Potts, you testified that you were not familiar, that you didn't pay too much attention to the records-part of your business and so forth. What part of it were you familiar with as far as the records and the books and financial status of your company? A. *Oh, I never looked after that, just at the windup of the year, whatever the total was where at the end of the year; as far as book-work, I didn't know anything about it.*

"Q. Did you ever have any reports made to you that you did look at concerning your business? A. *Oh, I generally looked at the financial report sometimes during the season, when somebody asked for it or something like that.*

"Q. *Did you look at this financial report or this audit report? A. I noticed the totals in it is all I ever looked at until Mr. Dell showed me the front of it.*"

In Rodkinson v. Haecker, 248 N.Y. 480, 485, 162 N.E. 493,

495, New York's highest appellate court said: "As a general rule, where an account is made up and rendered, he who receives it is bound to examine the same, or to procure some one to examine it for him. If he admits it to be correct it becomes a stated account, and is binding on both parties. If, instead of an express admission of the correctness of the account, the party receiving it keeps the same by him and makes no objection within a reasonable time, his silence will be construed into an acquiescence in its justness, and he will be bound by it as if it were a stated account. An account stated is conclusive upon the parties, unless fraud, mistake, or other equitable considerations are shown, which make it improper to be enforced." Also, see, Leather Manufacturers' Bank v. Morgan, 117 U.S. 96, 6 S. Ct. 657, 29 L. Ed. 811; Manheim Dairy Co. v. Little Falls Nat. Bank, Sup., 54 N.Y.S. (2d) 345, 358.

In Dorsey v. Reconstruction Finance Corp., D.C., 101 F. Supp. 197, 200, it is said: "Where an account is rendered by one party to another, and is retained by the latter beyond a reasonable time without objection, this constitutes a recognition by the latter of the correctness of the account and establishes an account stated. An account stated is in the nature of a new promise or undertaking, and raises a new cause of action between the parties."

In Hendy v. March, 75 Cal. 566, 17 Pac. 702, 703, it is said: "The defendant contends * * * he is entitled to show mistakes in the account. But an account stated becomes a contract. As was said * * * in Carey v. Philadelphia & C. Petroleum Co., 33 Cal. [694] 697: 'An account stated alters the nature of the original indebtedness, and is itself in the nature of a new promise or undertaking. * * * An action upon an account stated is not found upon the original items, but upon the balance ascertained by the mutual consent of parties'. It follows that, as is the case with other contracts, *the mistake must be put in issue by the pleadings*. [Citing cases]'. The pleadings here did not present any such question." Emphasis supplied.

In Gardner v. Watson, 170 Cal. 570, 574, 150 Pac. 994, 995,

it is said: "The action upon an account stated is not upon the original dealings and transactions of the parties. *Inquiry may not be had into those matters at all.* It is upon the new contract by and under which the parties have adjusted their differences and reached an agreement." Emphasis supplied. Also, see, Ahlbin v. Crescent Commercial Corp., 100 Cal. App. (2d) 646, 224 Pac. (2d) 131, 133.

*Thirteenth.* In his answer filed May 8, 1953, the defendant Potts, under oath, stated that, "the defendant was on the 1st day of March, 1951, indebted to the plaintiff in the sum of Four Hundred Ninety-five Dollars and Thirty-five Cents ($495.35) and that the defendant is yet indebted to the plaintiff in said sum, as a balance due upon said account."

Twenty-six days after March 1, 1951, when defendant swore he owed plaintiff but $495.35, he paid her by cashier's check $1,400.00 and on the same day, March 27, 1951, in a letter accompanying the cashier's check, being Plaintiff's Exhibit No. 3, wrote plaintiff: "Try and have some more a little later."

*Quare:* If he only owed plaintiff $495.35 on March 1, 1951, and paid her $1,400 on March 27, 1951, how does it happen that on May 8, 1953, defendant still was indebted to plaintiff in the sum of $495.35? Any right-minded man would have long since paid his employee the $495.35 which he admits owing her since prior to March 1, 1951, which would not in any manner have prejudiced his right to contest the balance claimed.

On June 15, 1953, on his direct examination at the trial the defendant Potts testified:

"Q. Mr. Potts, the plaintiff has offered her Exhibit No. 3, purporting to be a letter; did you write that letter? A. I did.

"Q. And at that time you wrote the letter, did you send the plaintiff the $1,400.00 that she has described. A. Yes, I did, a cashier's check.

"Q. Will you tell us whether or not that was sent as a payment on the account stated, which she described? A. *No, it wasn't.*

"Q. Well, what was it a payment on Mr. Potts? A. *It was salary which I knew she had some salary coming.*

"Q. She has testified that you paid her a thousand dollars in June, in 1950, did you? A. Yes sir.

"Q. And what do you have to say with respect to whether or not that was a payment on this account stated? A. *It was not.*

"Q. And on what was it a payment? A. *On the same as the salary that I knew that I had owed her for that period of years when she hadn't drawn her checks.*

"Q. Mr. Potts, you say when she hadn't drawn her checks? A. *Yes.*"

*Instructions to Jury.*

The trial judge gave the jury thirteen written instructions. In his instructions Nos. 1, 2, 4, and 8, all given without objection, the judge properly informed the jury as to the issue of fact for their determination, and he correctly stated the law of this jurisdiction governing an action upon an account stated. These four instructions read:

*Instruction Number 1.* "You are instructed that the plaintiff performed certain work and services for the defendant between the dates of January 1, 1943, and December 31, 1948. The plaintiff, by her complaint, in this action, claims that, on February 15, 1949, an account was stated between the plaintiff and the defendant upon which a balance was agreed to be due the plaintiff from the defendant for such services and work, in the sum of Eight Thousand Four Hundred Dollars ($8,400.00), upon which the defendant has made two payments, leaving a balance due of Six Thousand Dollars ($6,000.00). The defendant, by his answer, has denied that there was an account stated.

"This raises an issue of fact to be determined by the jury.

"An account stated is a new contract arising out of an account existing between the parties; an agreement that the terms of the account and the balance struck are correct, with an agreement expressed or implied for the payment of such balance.

"The plaintiff has the burden of proving to you by the preponderance of the evidence that there was an account stated as alleged by her in her complaint.

"By the preponderance of the evidence is meant the greater weight of the evidence, or that evidence which is most convincing to the minds of the jury."

*Instruction No. 2.* "You are instructed that in this case the plaintiff has alleged that there was an account stated between the plaintiff and the defendant, and has offered proof in support thereof. The defendant, by his answer, has denied that there was an account stated and has offered proof in support thereof.

"You are instructed that before you can find that there was an account stated, as defined in these instructions, you must find by a preponderance of the evidence that both plaintiff and the defendant assented to the account and balance claimed or acquiesced therein. The form of the acquiescence or assent is immaterial.

"In determining whether or not there was an account stated between the parties, you may take into consideration all of the evidence offered in the case, together with all the surrounding facts and circumstances, as disclosed by the evidence."

*Instruction No. 4.* "You are instructed that an 'account stated' is a contract arising out of an account existing between the parties—an agreement that the items of the account and the balance struck are correct, with an agreement, express or implied, for the payment of such balance. The form or manner of agreement is, however, immaterial."

*Instruction No. 8.* "If you find that either or both of these parties prepared the account alleged by the plaintiff, still such an account would not be an 'account stated' unless you find by the preponderance of the evidence that it was intended to be such and unless it was assented to as such by both the plaintiff and the defendant."

*Specifications of Error.*

The defendant Potts has assigned seventeen specifications of error.

In his specifications Nos. 12 to 16, both inclusive, the defendant contends it was error for the trial judge to refuse to give defendant's offered Instructions Nos. 9, 11, 12, 13 and 15. As before stated, the trial judge, the Honorable Guy C. Derry, without objection, correctly instructed the jury as to the law applicable to this case, and in so doing he adequately covered the essential points contained in the refused instructions hence there was no error in refusing defendant's proposed instructions. There is no merit whatever in defendant's specifications Nos. 12 to 17, both inclusive, and the majority opinion so finds and holds.

It is upon the defendant's first eleven specifications of error that the majority opinion grounds its order reversing the judgment entered in the trial court.

I shall therefore now enter upon the somewhat arduous task of examining defendant's specifications of error Nos. 1 to 11.

*Specification No. 1.* In his first specification of error, the defendant contends that it was error for Judge Derry to sustain plaintiff's objection to the question, hereinafter set forth in italics, put to Miss Holmes on her cross-examination on plaintiff's case in chief. The record shows:

"Q. *During the period covered by the statement which has been called 'Plaintiff's Exhibit No. 1' that is the period from 1943 to the year 1948, were your duties at Mr. Potts' place of business, substantially the same?*

"Mr. Lamb: To which the plaintiff objects for the reason that it is irrelevant, immaterial, outside of the issues as drawn by the pleadings, and therefore incompetent.

"Court: Sustained."

This case was being tried to a jury. It was highly important therefore that the trial be confined to the issue or issues properly presented by the pleadings. Otherwise much confusion and great injustice would most certaintly attend. The nature of plaintiff's duties, at defendant's place of business from 1943

to 1948, and whether or not such duties had been increased, decreased or otherwise changed during such period of time, were not and are not issues in plaintiff's case. This is a suit to recover a balance due on an *account stated* and agreed to on February 15, 1949, and not an action seeking an accounting, nor is it an action to recover a balance due on a running account.

The above question, propounded to plaintiff, called for immaterial and irrelevant testimony entirely outside the issue stated by Judge Derry in his opening Instruction No. 1 given to the jury, without objection, and therefore assented to by all concerned.

Defendant's above-italicized question was not within the scope of proper cross-examination, and apparently it was an attempt by defendant to make his defense on testimony sought to be elicited from plaintiff on her cross-examination in her case in chief. Defendant was afforded an opportunity to introduce his evidence and present his defense at the proper time, but this came after plaintiff had rested her case in chief and not before.

· The interrogatory called for a simple *yes* or *no* answer. Neither answer would have aided defendant's case. Judge Derry's ruling, sustaining plaintiff's objection to the question, was correct and the defendant suffered no prejudice therefrom.

*Specification No. 2.* For his second specification of error, the defendant contends that it was error for Judge Derry to sustain plaintiff's objection to the question, "Miss Holmes, *why was this audit prepared?*" put to the plaintiff on her cross-examination by defendant's counsel on plaintiff's case in chief.

The record shows that on his cross-examination of the plaintiff, on her case in chief, defendant's counsel proceeded as follows:

"Q. *Miss Holmes, why was this audit prepared?*

"Mr. Lamb: To which we object, Your Honor, as being incompetent, irrelevant, and immaterial, and outside the issues of the cause.

"Court. Sustained.

"Q. Miss Holmes, was this instrument prepared for the sole

purpose of adjusting the indebtedness between you and Doyle Potts or for some other purpose?

"Mr. Lamb: To which the plaintiff objects for the reason that the pleadings as filed by the defendant, preclude him from making any inquiry into the purpose of the account stated, and that the question and the information attempted to be elicited from the witness is incompetent, and for the further reason that it calls for a conclusion on the part of this witness.

"Court: Overruled.

"A. To adjust the indebtedness between Doyle [Potts] and myself."

While the trial judge sustained plaintiff's objection to the first interrogatory, italicized and quoted above, yet immediately thereafter he overruled plaintiff's objection to the next interrogatory which, although couched in different language, called for and produced the same answer and information as was sought in the first interrogatory.

No possible prejudice could have resulted to defendant or to his defense by reason of Judge Derry's first ruling sustaining plaintiff's first objection in view of his second ruling overruling plaintiff's second objection and allowing plaintiff to answer the question propounded. Defendant's specification of error No. 2 is wholly lacking in merit.

*Specification No. 3.* After Judge Derry had overruled plaintiff's objection to the last question quoted above in our determination of defendant's Specification of Error No. 2, defendant's counsel persisted in his improper cross-examination of plaintiff as follows:

"Q. *Miss Holmes, isn't a fact that on the occasion that you speak of, Mr. Potts had asked you to prepare statements showing his assets and indebtedness to have them ready for a lawsuit in which he was engaged?*

"Mr. Lamb: To which the plaintiff objects for the reason that it is incompetent, irrelevant, and immaterial, and does not pertain to the issues of this case.

"Court: Sustained.

"Q. *You have said they were prepared to adjust the indebtedness between you; were they prepared for any other purpose?*

"Mr. Lamb: To which we object, it calls for a conclusion, repetition, incompetent, irrelevant, and immaterial.

"Court: Sustained.

"Q. Miss Holmes, when did the defendant Doyle Potts, ask you to prepare the figures, showing the indebtedness between yourself and him? A. In February 15, 1949.

"Q. Not until that day? A. No. * * *

"Q. You testified, Miss Holmes, that Mr. Mountain was on the occasion, auditing your books and setting up a new set didn't you? A. Yes sir.

"Q. Was that the purpose for which this audit was prepared?

"Mr. Lamb: To which we object on the ground that it is repetitious, the court has already sustained the objection to a question of similar import, and for that attempted now is incompetent, irrelevant and immaterial, and outside the issues of this case.

"Court: Sustained.

"Q. When did you give Mr. Potts the instrument that has been referred to as 'Plaintiff's Exhibit No. 1'? A. It was given to him after I had run it through the typewriter, the same day, or the same* * *.

"Q. The same day, the same evening as the occurrences you have described? A. Yes, as I remember."

Here the defendant contends that Judge Derry committed error in sustaining plaintiff's objection to the above questions shown in italics.

This was not proper cross-examination. It was merely an attempt by defendant to make his defense and case on his cross-examination of the plaintiff on her case in chief.

There is much in the record before us that discloses the real purpose for which Plaintiff's Exhibit No. 1 and Defendant's Exhibit "C" were prepared.

The person best qualified to inform the jury as to the *real*

*purpose,* for which he, in December, 1948, employed Rowland, Thomas & Company and R. R. Mountain, certified public accountants, to examine his books and records and supply him with an audit report thereon was the defendant Potts.

Likewise the one best qualified to inform the jury as to the *real purpose* for which he, on the night of February 15, 1949, ordered and directed the plaintiff, to then and there set about compiling her salary account was the defendant Potts.

That night Potts was clearly perturbed, impatient and insistent. He testified:

"I had to have a audit to get my books up for kind of a law suit we were having * * * finally this last day I had one more day to get it in and *that night* I went down and *I had just to demand* to have some kind of records to present to court the next morning for my attorneys, which had to be done through the auditor's office. * * * She [plaintiff] told me it couldn't be gotten out and I told her *we* would just have to have that for tomorrow there, *we* just couldn't get by without it because they were forcing me to get the figures through, both on that and also other figures on the reports. * * *

"Q. And who was the auditor that they were being prepared for? A. Rowland, Thomas & Company—Bob Mountain of the Rowland, Thomas Company.

"Q. Well did you see the figures that she got ready for them? A. *I did not.*

"Q. Do you know how late she worked that night? A. *No, I couldn't say.*"

It is highly *improbable* that Potts, who then was on the spot with a deadline to meet in court the next morning did not stick with the plaintiff until the completion of the job to which he had assigned her and which, according to his testimony, she considered impossible of performance within the space of one night.

On his direct examination by Mr. Hibbs at the trial on June 15, 1953, the defendant testified:

"Q. I will show you an instrument which has been marked

'Plaintiff's Exhibit No. 1'—have you heard Miss Holmes testify with respect to the making of that instrument? A. Yes I did.

"Q. I will ask you whether on the 15th of February, or any other time, Miss Holmes ever delivered that instrument to you? A. Never did.

"Q. Did you ever see it before? A. *Yes, I saw it in your office for the first time.*"

It is highly *improbable* that impatient and demanding Mr. Potts had so little concern in either the manner or the time in which plaintiff performed the urgent demands made upon her on the night of February 15, 1949, that he allowed more than four years to elapse before he, in June, 1953, at Attorney Hibbs' office, got his first glimpse of Plaintiff's Exhibit No. 1 which contains the figures and data required by defendant's accountants to enable them to complete their audit report of March 1, 1949, being Defendant's Exhibit "C."

*Specification No. 4.* In his specification of error No. 4, the defendant contends that it was error for Judge Derry to sustain plaintiff's objection to the introduction in evidence of what purports to be but the employer's copy of a partially printed and partially longhand paper purporting to be but a carbon copy of "Form UC-5 Revised 3-44-40M. Unemployment Compensation Commission of Montana, Helena, Montana 1. Employer's Report of Wages Paid to Each Employee for Calendar Quarter Ending June 30—43" wherein appears: "2. Employer's Name, Address and Account Number Doyle S. Potts 2313-1st Ave. No., Billings, Mont. 3. Employee's Social Security Number 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. 4. Name of Employee Doris B. Holmes 5. Wages Paid 280.—"

Upon the sustaining of plaintiff's objection to Defendant's proposed Exhibit "A," defendant's counsel at the trial made an offer of proof, the objections to and the court's ruling thereon being as follows, viz:

"Mr. Hibbs: The defendant offers to prove by the witness on the stand that the exhibit, Defendant's Exhibit 'A,' is a report written by the plaintiff in her own handwriting, showing af-

firmatively that her rate of pay as an employee of the defendant was *forty dollars* per month at a time after the 1st of January of 1943, and at least during the first quarter of 1943, contrary to her sworn testimony that the Plaintiff's Exhibit 1 showed the last date on which she was paid at the rate of *forty dollars* per month.

"Mr. Lamb: The plaintiff objects to the defendant's offer of proof for the reason that the proper foundation has not been laid; that the instrument offered as an exhibit is not the original thereof, and it is, therefore, not the best evidence; that an examination of the instrument itself shows that a portion thereof is a carbon copy and the portion pertaining to Doris Holmes is written in a colored pencil, showing that the instrument itself has been altered or changed since the original thereof was prepared; that *the sum of money shown, is $280,* and the offer of proof by the defendant is that this report is for one quarter's wages, earned by Doris Holmes, and that it shows that she received the sum of forty dollars per month, although *the assumption or offer of proof is contrary to the instrument itself.* For the further reason that it is improper cross-examination, that it is outside the issues of this case as drawn by the pleadings, this being an action upon an account stated, and it is an attempt on the part of the defendant to go into the separate items of the account which is contrary to the law of the State of Montana, and it is, therefore, incompetent, irrelevant, and immaterial for the foregoing reasons, and it is further beyond the scope of the direct examination of the witness.

"Court: The court takes the view that Defendant's Proposed Exhibit 'A' on its face, was made at a time long prior to the making of the alleged account stated and would, therefore be incompetent to prove or disprove the account stated as the same is testified to and set forth in the complaint. The objection is sustained."

At page 8 of defendant's first brief on appeal filed in this court on March 12, 1954, defendant's counsel makes this state-

ment relative to Defendant's Proposed Exhibit "A" and the above-quoted offer of proof, viz:

"This evidence, connected up as we offered to do it, was admissible evidence to show by plaintiff's own handwriting, that there were entries subsequent to December 31, 1942, *showing plaintiff as earning $40.00 per month salary,* contrary to her testimony on the witness stand."

A calendar quarter is three months or one-fourth of a year. The calendar quarter ending June 30—43, began on April 1. The quarter consisted of the months of April, May, and June.

Defendant's counsel well knows that one who is paid $280 for three months is not paid at the rate of $40 per month, and that it was an imposition to so contend in the district court as well as in this court especially in light of the statement of plaintiff's counsel in his objection to the offer of proof pointing out *"that the sum of money shown is $280, and the offer of proof by the defendant is that this report is for one quarter's wages earned by Doris Holmes, and that it shows that she received the sum of forty dollars per month, although the assumption or offer of proof is contrary to the instrument itself."*

There was no issue in this case as to plaintiff's salary rate for the months of April, May and June in the year 1943.

Defendant's Exhibit "C" and plaintiff's Exhibit No. 1 both show that during the entire calendar year of 1943 plaintiff's wage rate was $100 per month.

Defendant's Exhibit "C" further affirmatively shows that the defendant, on or before March 1, 1949, *confirmed* the statement therein to this effect: "The amount of accrued salary due as of December 31, 1948, has been computed as follows: 1943— 12 months at $100.00—$1200.00 * * *."

Finally, in view of the fact that the plaintiff has pleaded, testified and contended throughout that he had never been presented with an *account stated,* the law will not permit him to now challenge the accuracy of the *account stated.* As is said in Wimp Packing Co. v. Wimp, 313 Ill. App. 262, 39 N.E. (2d) 720: "The defendant who contended that he had never been

presented with an account could not at the same time contend that the account was inaccurate."

Judge Derry's rulings were correct under the issues presented by the pleadings of the parties, and under the numerous decisions of this court cited herein. There was and is no merit in defendant's Specification of Error No. 4.

*Specification No. 5.* Defendant specifies as error the sustaining by Judge Derry of plaintiff's objection to the following question put to defendant on his direct examination, viz:

"Q. *Mr. Potts, when did Miss Holmes first go on full-time employment?*

"Mr. Lamb: To which the plaintiff objects upon the grounds that it is repetition, that it is incompetent, irrelevant, and immaterial, for the reason that the evidence on behalf of the plaintiff shows that an account was stated on February 15th, 1949, and a new contract then came into existence because of a balance being struck and that it is improper for the defendant to go into any of the items of the account or anything pertaining to the employment either prior or after the date of February 15, 1949, when the account was stated, and is an attempt to vary that contract."

Here again it affirmatively appears in defendant's Exhibit "C" that he *confirmed* the rate of pay set forth and stated in the exhibit. The defendant will not be permitted to thus impeach his own exhibit and evidence.

The objection was good and the trial court's ruling was correct.

*Specification No. 6.* Defendant specifies as error the sustaining by Judge Derry of plaintiff's objection to the following question asked of defendant, viz:

"Q. *When Mrs. Williams left your employ, what effect did that have upon the position of the plaintiff, Doris B. Holmes, as your employee, with respect to her duties and her rate of pay?*

"Mr. Lamb: To which the plaintiff objects for the reason that it is incompetent, irrelevant, and immaterial, and outside the

issues of this case, the question being a preliminary question and as a foundation for the defendant's offer of proof No. 2, which pertains to a period in July, 1948, where as the account stated as shown by the testimony of the plaintiff, was made on February 15, 1949, and the circumstances now being considered by the questions relates to an antecedent relationship between the plaintiff and defendant and is an attempt to go behind the account stated which is contrary to the decisions of the Montana Supreme Court and the theory adopted by the court in its previous rulings.

"Court: The objection is sustained, principally upon the ground that the answer to the question does not tend to prove or disprove the issue of whether an account was stated between the plaintiff and defendant as alleged in her complaint, and denied by answer."

Plaintiff's objection was good and Judge Derry's ruling was correct.

*Specification No. 7.* Defendant specifies as error the sustaining by Judge Derry of plaintiff's objection to the following question asked of the defendant, viz:

"Q. *Mr. Potts, I will ask you whether there was any increase in the duties of or rate of pay of Miss Doris B. Holmes, from the time she went to work for you as alleged by her in 1941, until July 1, 1948?*

"Mr. Lamb: To which the plaintiff objects for the reason that the evidence attempted to be elicited from the defendant is incompetent, irrelevant, and immaterial, and outside of the scope of the issues of this case, and is an attempt to go into the items of the account stated and the answer to the question would not tend to prove or disprove whether an account was stated between the parties on February 15, 1949.

"Court: Objection sustained."

Again plaintiff's objection was good and Judge Derry's ruling was correct.

*Specification No. 8.* Defendant specifies as error the sustaining by Judge Derry of plaintiff's objection to the following

questions asked of defendant, and to the sustaining of defendant's offer of proof No. 4, viz:

"Q. *Mr. Potts, what, if anything, was the agreed value per month, of the plaintiff's services to you, prior to July 1, 1948?*

"Mr. Lamb: To which the plaintiff objects for the reason that the same is incompetent, irrelevant, and immaterial, and outside the scope of the issues of this cause, and contrary to the theory of the law adopted by this court and the decisions of the Supreme Court of Montana, it being an attempt to examine the individual items contained in the account stated which has been admitted in evidence as plaintiff's Exhibit No. 1, and is an attempt to establish an improbability of an account being stated on February 15, 1949, and particularly in view of the failure of the defendant to set forth in his answer any pleading alleging fraud, error, or mistake.

"Court: The objection is sustained.

"Mr. Hibbs: The defendant now makes his offer of proof No. 4. The defendant offers to prove by the witness on the stand that the agreed value of the services of the plaintiff prior to July 1, 1948, was not more than Forty Dollars ($40.00) per month, to show the improbability of the defendant's having agreed to the so-called account stated.

"Mr. Lamb: The plaintiff objects to defendant's offer of proof No. 4, for the same reasons expressed to the question immediately preceding this offer of proof, and for the further reason that a proper foundation has not been laid for the offer of proof.

"Court: Objection sustained and offer denied."

*Specification No. 9.* Defendant specifies as error the sustaining by Judge Derry of plaintiff's objections to the following question asked of the defendant, and to the sustaining of objections to defendant's offer of proof No. 5, hereinafter set forth, viz:

"Q. *Mr. Potts, as a preliminary question, during the years 1941 to July, 1948, I will ask you whether you employed other bookkeepers than Miss Doris Holmes, and whether you knew*

*what the reasonable value of the services of bookkeepers and your
own employees was?*

"Mr. Lamb: To which the plaintiff objects upon the grounds
the same is incompetent, irrelevant, and immaterial, being out-
side the issues of this cause, and that the answer would not
tend to prove or disprove whether or not an account was stated
between the parties on February 15, 1949, and it is contrary to
the theory of law adopted by this court, and the decisions of the
Supreme Court of the State of Montana, in particular the May-
ger v. St. Louis Mining & Milling Co. case, at 68 Mont. 492
[219 Pac. 1102], and Mather v. Musselman, 79 Mont. 566 [257
Pac. 427], cited therein and preceding and following those de-
cisions.

"Court: Objection sustained.

"Mr. Hibbs: Do you sustain the objection?

"Court: Yes, while it was announced as a preliminary ques-
tion, it goes to the very same point."

Judge Derry's ruling was correct and is supported by the
above decisions of this court cited and relied upon by him.

*Specification No. 10.* Defendant assigns as error the sustain-
ing by Judge Derry of plaintiff's objection to the following
offer of proof, viz:

"The defendant offers to prove by the witness on the stand
that when he asked the plaintiff to ascertain the balance be-
tween them and that the plaintiff indicated she did not then
know what the balance then was.

"Mr. Lamb: The plaintiff objects to defendant's offer of
proof No. 7, upon the grounds and for the reasons expressed in
the objection to the question immediately preceding the offer
of proof No. 7, and for the further reason that the offer of proof
is indefinite and confusing and does not tend to prove or dis-
prove the existence of the account stated on February 15, 1949,
the preliminary question indicating that the time concerning
which this offer of proof is made, is at sometime subsequent to
the date of February 15, 1949.

"Court: Objection sustained and offer denied."

Judge Derry's ruling was correct and defendant suffered no prejudice therefrom.

*Specification No. 11.* Defendant assigns as error the sustaining by Judge Derry of plaintiff's objections to the following question asked of the defendant and to defendant's offer of proof No. 8, viz:

"Q. *Mr. Potts, I will ask you whether or not, there were, on or about the 15th of February, 1949, items for which the plaintiff was indebted to you and which items do not appear on the instrument which has been marked 'Plaintiff's Exhibit No. 1', you are familiar with that instrument?*

"Mr. Lamb: To which the plaintiff objects upon the grounds and for the reason that the same is incompetent, irrelevant, and immaterial, and for the reason that in Mather v. Musselman, et al., 79 Mont. 566 [257 Pac. 427], the Supreme Court of the State of Montana, has stated that the defendant in order to prove an omission from the statement of account, or the account stated, that the defendant must plead those omissions and for the further reason that the evidence now before the court is that the account of the plaintiff against the defendant was stated showing the amount due and that the balance was struck and agreed upon between the parties and that the existence or non-existence of some other separate account between the parties in the absence of any pleading in support thereof, is incompetent, and immaterial to the issues, and outside of the scope permitted in an account stated.

"Court: Objection sustained.

"Mr. Hibbs: The defendant now makes his offer of proof No. 8. The defendant offers to prove by the witness on the witness stand that there were items for which the plaintiff was indebted to the defendant on the 15th day of February, 1949, which were not taken into account in the computing of the so-called balance described in plaintiff's exhibit 1, and in the so-called account stated.

"Mr. Lamb: The plaintiff objects to defendant's offer of proof No. 8, for the reasons and upon the grounds expressed in

the objection to the question immediately preceding the offer of proof No. 8.

"Court: Objections sustained and offer denied."

Judge Derry's ruling was correct. The law is as below stated.

In Kronenberger v. Binz, 56 Mo. 121, 122, it is said: "There was no error in excluding the evidence to impeach the settlement. There was no foundation laid in the defendant's answer upon which this evidence could be admitted. A settlement is conclusive and can only be opened on the ground of fraud, or for errors or mistakes. The only issue in this case was whether there was a settlement or not. To impeach a settlement, the bill or answer for that purpose must specifically set forth the fraud, errors or mistakes complained of. [Citing cases]. The evidence offered was irrelevant to the issue and was therefore properly excluded."

In Hawkins & Co. v. Long, 74 N.C. 781, 782, it is said: "When an account rendered is not objected to in a reasonable time— here three months—the failure to object, will be regarded as an admission of its correctness by the party charged. Wiggins v. Burkham, 10 Wall. 129 [19 L. Ed. 884]. * * * The defendant is bound, because he received the account thus stated, and acquiesced in it until action brought three months afterwards, without any dissent. When the assent of the defendant thus appears, the balance struck becomes an original demand and amounts to an express promise to pay the actual sum stated. The balance of the account stated is principal; and it seems that it cannot be re-examined to ascertain the items, except for fraud or mistake. [Citing cases]. What is an account stated? It is nothing but the agreement of both parties that all the articles are true."

*Novelty of the Question.* The defendant contends that because in his answer he "specifically denies that there was on the 15th day of February, 1949, or at any other time an account stated between the plaintiff and the defendant" that there was nothing upon which a fraud, mistake or error could be surcharged, and that with no other or further pleading he should

be permitted to impeach the *account stated,* pleaded in its entirety, and to introduce evidence tending to show circumstances such as would render it *improbable* that he would have agreed to state the account.

As to the above point of *improbability* so attempted to be raised by the defendant at his trial, and also in his briefs on appeal to this court, the majority opinion by Mr. Justice Castles states:

"So far as we can determine, this point has never been squarely decided in this state. * * *

"As stated above, we find no Montana decision specifically ruling on the admissibility of evidence of 'improbability,' whether under a plea of general denial or a special plea of fraud, error or mistake.

"Recognizing the novelty of the question and the probability of appeal, the court trying the present case carefully stated its position * * *."

On his appeal to this court, the defendant must stand or fall upon the specific assignments of error which he has listed and argued, and unless he can show prejudicial error resulting to him from one or more of the trial court's rulings on which he has specified error, the appellate court is without right or authority to disturb the judgment entered on the verdict in the district court.

We are not at liberty to here set out on an uncharted course to supply counsel with the answer to the so-called *novel question* or point which he has attempted to raise.

The law is as stated in Raymond v. State Civil Service Commission, 104 Colo. 458, 92 Pac. (2d) 331, 332, wherein the court said: "The briefs are largely devoted to a discussion of these points. Desirable as it may seem to the parties, a judicial determination of the suggested questions cannot be had in the proceeding before us. Judgments must be found upon litigable issues presented by the pleadings, and not pronounced in answer to solicitation on irrelevant abstract legal queries propounded by the parties and argued in their briefs. * * * It

is elementary that to properly raise a triable issue, an answer must be responsive to the complaint. [Citing cases]. Likewise, to be properly available, a defense must of necessity be against the claim asserted by the plaintiff.''

There was nothing new nor novel in the frivolous general demurrer which defendant interposed to plaintiff's perfectly good complaint nor in the evasive, non-responsive and null second clause inserted in the first paragraph of defendant's answer, nor in the numerous attempts made on cross-examination in plaintiff's case in chief and on direct-examination in defendant's case to go outside of and beyond the issues properly presented by the pleadings herein in persistent attempts to cloud the issues and to convert this lawsuit from one on an *account stated* to an action on an open or running account or to a suit for an accounting.

Defendant's so-called ''defense'' vanished when defendant's counsel produced and presented to plaintiff in open court the account stated of February 15, 1949, Plaintiff's Exhibit No. 1, which the defendant, and/or his accountants and attorneys had and kept in their possession at all times from February, 1949, to June 15, 1953, and when, without objection, defendant introduced in evidence his audit report of March 1, 1947, Defendant's Exhibit ''C'', fully corroborated each item and statement contained in the *account stated*, and which audit report shows on its face the defendant had confirmed as true and correct.

*Law of the Case.* There are a number of statements and observations in the majority opinion that are clearly at variance with the record before us, and if same are not corrected before this court divests itself of jurisdiction herein by issuing its remittitur, great harm and injustice will result with no means available of correcting same either in the trial court or in this court in the event of a second appeal for a decision of the Supreme Court on an appeal is the *''law of the case''* on a subequent trial whether right or wrong.

In Anderson v. Border, 87 Mont. 4, 8, 285 Pac. 174, 176, this court said: ''The greater portion of appellant's exhaustive

brief is devoted to an attempt to demonstrate that our former opinion in this case is erroneous, but the short answer is that as to all points which were directly involved in, and were passed upon, in the former appeal, and which are involved in this case, whether the opinion is right or wrong, it is the law of the case, was binding upon the trial court, and is binding upon us.'' Also, see, Apple v. Edwards, 123 Mont. 135, 139, 211 Pac. (2d) 138; Ivins v. Hardy, 123 Mont. 513, 516, 217 Pac. (2d) 204; Lake v. Emigh, 121 Mont. 87, 91, 190 Pac. (2d) 550.

Both the law and the facts are with the plaintiff in this action. Each ruling by Judge Derry of which the defendant here complains is fully sustained by one or more of the controlling decisions of this court hereinbefore cited in this dissent.

No Montana decision supports either the defendant's contention or the majority holding herein. Yet a reversal is ordered. This a quorum has the power but not the right to do.

MR. JUSTICE BOTTOMLY:

I concur in the foregoing dissenting opinion by Mr. Justice Adair.